Michael SHAKMAN, et al., Plaintiffs,

v.

DEMOCRATIC ORGANIZATION OF
COOK COUNTY, et al., Defendants.

No. 69 C 2145.

United States District Court,
N.D. Illinois, E.D.

Dec. 16, 1987.

D. Maria Majeske, Janice S. Loughlin, Steven R. Gilford, Chicago, Ill., for plaintiffs.

Judson H. Miner, Acting Corp. Counsel, City of Chicago by Jonathan P. Siner, Asst. Corp. Counsel, Chicago, Ill., for defendant City of Chicago.

Richard M. Daley, State's Atty. of Cook County by Randolph T. Kemmer, Asst. State's Atty., Greg A. Kinczewski, Chief Atty., Cook County Forest Preserve Dist., Chicago, Ill., for Cook County defendants.

## ORDER

BUA, District Judge.

Before this court is plaintiffs' motion to establish an adjustment factor for attorneys' fees. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

## I. FACTS

This is a class action brought under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985, challenging the patronage practices of the regular Democratic and Republican Party organizations in most of the Northern District of Illinois. Plaintiffs are independent candidates, voters and taxpayers. The defendants include various government officers at the state and local levels, local government entities, and local organizations and officials of the two major political parties. Plaintiffs' principal theory is that the use of state and local government patronage power to coerce political support for the regular Party organizations and their candidates by the use of political hiring, firing and promotion practices violates independents' rights to fair and equal participation in the electoral process.

This case has a long history in this court. A 1969 dismissal of this action by Judge Marovitz on the ground of lack of standing was reversed by the Seventh Circuit Court of Appeals in 1970. *Shakman v. Democratic Org. of Cook County*, 435 F.2d 267 (7th Cir.1970) (*"Shakman I"*). Following that reversal, plaintiffs entered into a consent decree with many of the Democratic and Republican defendants. In 1979, this court found that all defendants engaged in a conspiracy to deprive plaintiffs of their constitutional and civil rights to a free political and electoral process. *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315, 1342 (N.D.Ill.1979) (*"Shakman II"*). Recently, the Seventh Circuit reversed the political hiring portion of *Shakman II* deciding plaintiffs' asserted injuries lacked sufficient proximity to defendants' conduct to afford standing. *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315 (N.D.Ill.1979), *rev'd in part* 829 F.2d 1387, 1396–99 (7th Cir.1987) (*"Shakman III"*). The Seventh Circuit's most recent pronouncement in *Shakman III*, however, affected only a small number of defendants as a vast majority declined to appeal the 1979 order.[1]

This court's last order concerning this case dealt with plaintiffs' motions to calculate costs and attorneys' fees pursuant to

1. The defendants electing to appeal this court's entry of summary judgment in 1979 include: George Dunne, President of the Board of Commissioners of Cook County; Stanley Kusper, Jr., the Cook County Clerk; Thomas C. Hynes, Assessor of Cook County; the Forest Preserve District of Cook County; the Democratic Party County Central Committee for Cook County and its members; and Edward R. Vrdolyak.

42 U.S.C. § 1988. Although arriving at a base amount or "lodestar" of $883,504.75 for attorneys' fees, this court specifically reserved ruling on what multiplier, if any, should be applied to compute reasonable attorneys' fees for the hours expended during pendency of this case. *Shakman v. Democratic Org. of Cook County*, 634 F.Supp. 895, 905 (N.D.Ill.1986) (*"Shakman IV"*). Plaintiffs now motion this court for determination of the multiplier issue.

## II. DISCUSSION

Plaintiffs claim that the nature of this case and the results achieved are so extraordinary that an upward adjustment of the lodestar is appropriate and necessary to arrive at a reasonable attorneys' fee under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (the "Awards Act"). According to plaintiffs, a multiplier is necessary to compensate counsel for delay in payment, exceptional efficiency, lost opportunities, successful results, and risk of nonpayment.[2]

■ Defendants argue, however, that any adjustment to the lodestar for the reasons stated by plaintiffs is impermissible in light of this court's earlier order in *Shakman IV* and the Supreme Court's rulings in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, ——— U.S. ———, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*). Defendants first argue that this court has already compensated plaintiffs for delay in payment by choosing to compute the lodestar based on the current hourly rate charged by plaintiffs' counsel. *See Shakman IV*, 634 F.Supp. at 902–03. Defendants also take the position that *Delaware Valley I* effectively precludes any adjustment for the factors of exceptional efficiency, successful results and lost opportunities, as these factors are presumably addressed when the lodestar is computed by multiplying hours reasonably spent by a reasonable hourly rate. *Delaware Valley I*, 478 U.S. at ———, 106 S.Ct. at 3098–3099. Finally, defendants assert that the clear import of *Delaware Valley II* is that adjustments for risk of loss are no longer permissible.[3] *Delaware Valley II*, 478 U.S. at ———, 107 S.Ct. at 3087. Because of the impact which the Supreme Court's rulings in *Delaware Valley I* and *II* have on the issue before this court, a detailed review of *Delaware Valley I* and *II* will be undertaken before proceeding to the arguments presented by the parties.

### A. *Delaware Valley I*

The *Delaware Valley* litigation arose in the context of an action asserted by a citizens' council and others against the Com-

---

**2.** Plaintiffs only seek fee enhancements for four of their attorneys: Mr. Shakman, Mr. Johnson, Mr. Plotkin, and Mr. Fross. Of the $883,504.75 in fees awarded for all attorneys in *Shakman IV*, $847,403 is attributable to the hours expended by these four attorneys. Thus, any adjustments to the lodestar resulting from this order will be based on the $847,403 figure and not the total base award of $883,504.75.

**3.** Defendants also contend that for equitable reasons, no multiplier should be awarded to certain of plaintiffs' counsel because they are members of law firms which were subsequently joined by some of the named individual defendants. Defendants assert that if a multiplier was awarded, former defendants would improperly receive a portion of that enhancement as plaintiffs' counsel's law partners. However, this contention was expressly rejected when this court denied defendants' motion to compel documents relating to plaintiffs' counsel's partner-

ship agreements. *See Shakman v. Democratic Org. of Cook County*, No. 69 C 2145, slip op. at 1 (N.D.Ill. Oct. 10, 1985). Moreover, this court has already determined in *Shakman IV* that defendants had not presented any extraordinary circumstances which precluded an award of reasonable attorneys' fees. *Shakman IV*, 634 F.Supp. at 899. Defendants are misguided in their assumption that an award of a multiplier results in some type of bonus that is unrelated to fees actually earned by plaintiffs' counsel and that inequity would occur if former defendants were to receive part of this bonus. No logical basis exists for distinguishing between fee awards which include an adjustment to the lodestar and those which do not because multipliers are awarded only when the lodestar fails to produce a reasonable attorney's fee. Finally, because the counsel at whom defendants' objection is directed have since associated themselves with new law firms, defendants' argument is moot.

monwealth of Pennsylvania to compel compliance with a vehicle emission inspection and maintenance program mandated by provisions of the Clean Air Act, 42 U.S.C. § 7401 et seq. After prevailing on the merits in the district court, the citizens' council petitioned for an award of costs and attorneys' fees pursuant to § 304(d) of the Clean Air Act which provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such an award is appropriate." 42 U.S.C. § 7604(d).

Granting the request for fees, the district court first segregated the attorney's work on the case into nine distinct phases and then scrutinized the number of hours claimed by each attorney. Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 581 F.Supp. 1412, 1420–31. Citing reasons such as insufficient documentation, duplication of effort and inefficient use of time, the court reduced the total number of hours claimed by almost one third. Id. After further dividing the time claimed into three subclasses depending on the district court's perception of the relative complexity of the work completed, the district court multiplied the hours allowed by one of three hourly rates and arrived at lodestar figures for each of the nine phases. Id.

Next, the district court addressed the issue of whether the risk of nonpayment assumed, quality of work performed and results obtained by the council's attorneys necessitated a multiplier be assigned to award a "reasonable attorney's fee." Id. at 1431. The district court stated that new and novel issues were raised and resolved by the suit with little or no precedent. Id. The district court also emphasized that "the contingent nature of plaintiff's success [had] been apparent throughout [the] litigation." Id. · Relying on the foregoing

statements, the district court assigned a multiplier of two to those phases of the litigation where the likelihood of success appeared most removed. Id. The court then commented on the superior quality of legal work performed on behalf of the citizens' council during one phase of the litigation. Id. Finding an increase premised on the quality of work performed and the successful results obtained "fully justified," the court awarded an additional multiplier of two to one of the phases that had already been assigned a multiplier for risk of nonpayment. Id. The district court's award of multipliers was affirmed by the Court of Appeals, and the Supreme Court granted certiorari.

Reviewing the decision to award plaintiff's attorneys a fee enhancement, the Supreme Court first turned to the language of the section in the Clean Air Act providing for attorney's fees. Delaware Valley I, 478 U.S. at ——, 106 S.Ct. at 3095. Noting that § 304 of the Clean Air Act and § 1988 of the Awards Act, 42 U.S.C. § 1988, possessed similar language and a common legislative purpose, the Court concluded both provisions were to be interpreted in the same manner. Id. at ——, 106 S.Ct. at 3096. With this preface, the Court began a detailed review of prior decisions addressing methods for calculating reasonable attorneys' fees for prevailing parties under fee shifting statutes.

The Court first examined the approach taken in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), in which a list of twelve factors taken from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980) was used to ascertain a reasonable attorney's fee.[4] Delaware Valley I, 478 U.S. at ——, 106 S.Ct. at 3097. Although recognizing that Johnson was cited with approval by Congress

---

**4.** The twelve factors mentioned by the Johnson court include: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

when § 1988 was enacted, the Court was critical of the approach suggested in that case because of the likelihood that the rather subjective criteria presented to trial judges to set attorneys' fees would result in disparate awards. *Id.*

A second method for calculating attorneys' fees known as the "lodestar" approach was then analyzed. *Id.* Developed by the Third Circuit, the first step in the lodestar approach is to multiply the hours spent on the case by a reasonable hourly rate for each attorney. *Id.* (*citing Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976)). Once arriving at the lodestar figure, adjustments could be made for the risk of nonpayment, and the quality of work performed as evidenced by the complexity of issues, work observed, and results obtained. *Delaware Valley I,* 478 U.S. at ——, 106 S.Ct. at 3097. Though deeming the lodestar approach a preferable method for arriving at a reasonable fee, the Court emphasized that enhancements for the risk of nonpayment and the quality of an attorney's work still posed a threat of inconsistent fee awards. *Id.*

Next, the Court reviewed two of its earlier decisions concerning attorneys' fees under § 1988. *Id.* (*citing Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed. 2d 40 (1983); and *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The Court noted that the approach adopted in *Hensley* was essentially a hybrid that shared aspects of both the *Johnson* and lodestar methods of calculation. *Delaware Valley I,* 478 U.S. at ——, 106 S.Ct. at 3097. According to the *Hensley* decision "the starting point for determining the amount of reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (*quoting Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). After arriving at this base figure, *Hensley* instructs that the factors listed in *Johnson* decision could be considered to adjust the fee upward or downward. *Id.* However, as underscored by the Court, *Hensley* cautions that many of the factors listed in *Johnson* are usually subsumed within the initial lodestar calculation. *Id.* at ——, 106 S.Ct. at 3098 (*citing Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940).

In *Blum v. Stenson,* the first leg of the lodestar method was again adopted by the Court as the first step in calculating a reasonable attorney's fee. *Delaware Valley I* at ——, 106 S.Ct. at 3098 (*citing Blum v. Stenson,* 465 U.S. at 888, 104 S.Ct. at 1543–44). However, *Blum* emphasizes the lodestar figure (reasonable hours expended multiplied by a reasonable fee) should be presumed to be the reasonable fee to which counsel is entitled. *Id.* According to the Supreme Court, *Blum* specifically limits the consideration of many of the *Johnson* factors once believed available for enhancing the lodestar amount. *Id.* Quoting from *Blum,* the *Delaware Valley* Court observed that "novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Id.* Although recognizing the strong presumption of reasonableness attached to the lodestar figure did not foreclose the application of multipliers in all cases, the Court emphasized *Blum* limited the use of fee enhancements to certain "rare" and "exceptional" situations where specific evidence was offered and detailed findings were made documenting the exceptional nature of the case. *Id.*

Completing its review of prior authority, the Supreme Court reemphasized that a strong presumption should attach that the lodestar figure represents a reasonable attorney fee. *Id.* In the Court's view, whenever an attorney agrees to represent a client, an obligation automatically arises to "perform to the best of his ability and to produce the best possible results." *Id.* Since the lodestar method of computing fees accounts for such factors by considering the reasonable number of hours expended and ascertaining a reasonable hourly rate, the Court concluded that "little room [exists] for enhancing the award

based on [counsel's] post-engagement performance." *Id.*

Turning to the facts in the case before it, the Court rejected the district court's finding that an upward adjustment for successful results and superior work was appropriate. First, the Court flatly stated the quality of an attorney's performance "ordinarily should not be used to adjust the lodestar." *Id.* at ——, 106 S.Ct. at 3099.

Next, the Court stated that insufficient evidence existed in the record to conclude that this was one of the "rare" cases in which an upward adjustment for extraordinary performance and successful results was permissible. *Id.* It was observed that in the phase where a multiplier for superior performance had been awarded, the district court eliminated a large number of claimed hours on the basis that they were "unnecessary, unreasonable or unproductive." *Id.* The Court also pointed out that substantial numbers of hours allowed in this phase were compensated at rates set by the district court for work which could have been performed by an associate or paralegal. Additionally, the Court noted that the citizens' council presented no specific evidence demonstrating why the results achieved in the enhanced phases were so extraordinary that a multiplier was necessary to adequately compensate counsel. *Id.* Finally, the Court commented that the district court failed to make any detailed findings identifying why the lodestar figure did not provide a reasonable fee and why the performance of counsel was not adequately represented by the product of hours reasonably spent times a reasonable hourly rate when compared to fee awards in other cases with equally outstanding performance. *Id.* at ——, 106 S.Ct. at 3100. As such, the Court reversed the district court's determination that an enhancement for the quality of representation and the results achieved was supported by the facts in the case.

## B. *Delaware Valley II*

In *Delaware Valley II,* the Supreme Court addressed whether the district court erred in awarding a multiplier to compensate counsel for assuming the risk of loss and nonpayment. Although a sharply divided Court was unable to form a clear majority, the opinion of the four-member plurality taken together with the concurring opinion of Justice O'Connor provides some guidance.

The majority [5] began its analysis by observing that two considerations arise when an attorney agrees to accept a case with the understanding he will be compensated only if his client prevails. *Delaware Valley II,* —— U.S. ——, 107 S.Ct. 3078, 3081–82, 97 L.Ed.2d 585 (1987). First, because substantial delay is often encountered between when the attorney expends his time and when, assuming he prevails, he receives his compensation, the Court believed the lodestar figure could be adjusted to account for the delay in payment. *Id.* In the Court's view, such adjustments were consistent with the purpose of typical fee shifting statutes. *Id.*

Certain difficulties, however, were perceived with awarding an adjustment for the second consideration in contingency cases: the risk of nonpayment.[6] The majority reiterated the observations of certain commentators and lower courts that awarding enhancements for risk of nonpayment "penalizes the defendant with the strongest defense and forces him to subsidize the plaintiff's attorney for bringing other unsuccessful actions against other defendants." *Id.* at ——, 107 S.Ct. at 3085. The Court also expressed concern over the difficulty faced by courts in retroactively estimating the plaintiff's likelihood of success from the perspective of the attorney when

---

**5.** Only portions of the plurality's opinion with which Justice O'Connor concurred are referred to as the majority's or Court's opinion.

**6.** The majority made clear that adjustments for risk of loss or nonpayment could never be based on the fact that the case involves "an issue of public importance, that the plaintiff's position is unpopular in the community, or that the de-

fendant is difficult and obstreperous." The Court also noted that an enhancement for risk of loss could never be justified on the ground that a possibility exists that some of the time claimed by plaintiff's counsel would be deemed unnecessary by the district court and excluded from the lodestar. *Id.* at ——, 107 S.Ct. at 3085.

he first considered filing the action. *Id.* Additionally, the Court considered the view of some commentators that "because the contingency bonus cannot be determined with either certainty or accuracy, it cannot be justified on the ground that it provides an appropriate incentive for litigation." *Id.* Nevertheless, the Court acknowledged that other commentators have argued that an enhancement for risk of loss is a necessary inducement for an attorney to accept a case on a contingent basis. *Id.* at ——, 107 S.Ct. at 3082. Moreover, the Court recognized that numerous Courts of Appeals have upheld upward adjustments of the lodestar to account for the risk of loss. *Id.* at ——, n. 4, 107 S.Ct. at 3082 n. 4.

Next, the Court examined whether Congress in adopting the fee shifting statutes intended to allow fee enhancements for assuming the risk of loss. At this point, however, Justice O'Connor departed from the views of the plurality. Although the plurality determined that the legislative history of the fee shifting statutes was at best inconclusive on this issue, Justice O'Connor, together with the four dissenting Justices, took the view that Congress did not intend to foreclose the consideration of contingency in computing a reasonable attorney's fee. *Id.* at ——, 107 S.Ct. at 3089 (O'Connor, J., concurring in part). Weighing the above-described arguments favoring and disfavoring the use of contingency multipliers, the plurality determined that the risk of losing a lawsuit could not provide an independent basis for enhancing an otherwise reasonable attorney's fee. *Id.* at ——, 107 S.Ct. at 3086. As such, the plurality concluded "that multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is [sic] impermissible under the usual fee shifting statutes." *Id.* at ——, 107 S.Ct. at 3087. However, due to Justice O'Connor's concurring opinion rejecting the proposition that contingency multipliers were forbidden under fee shifting statutes, the plurality was forced to continue its analysis.

Assuming that the fee shifting statutes could be interpreted to allow risk enhancements in exceptional cases, the plurality nevertheless determined the district court erred in awarding a contingency multiplier. *Id.* at ——, 107 S.Ct. at 3088. According to the plurality, little risk was assumed by the council attorneys in conducting phases of litigation where contingency multipliers had been assigned because such phases occurred after the parties entered into a consent decree. *Id.* at ——, 107 S.Ct. at 3089. Even if a substantial risk of not prevailing could have been demonstrated to the plurality's satisfaction, the multiplier of two assigned by the district court was deemed excessive. *Id.* In the plurality's view, when a district court properly finds a real risk of not prevailing, it may at most award a risk enhancement equal to one third of the lodestar. Any additional adjustment, the plurality cautioned "would require the most exacting justification." *Id.* Finally, the plurality instructed that before any adjustment for risk assumption could be made, "there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.*

Justice O'Connor, although agreeing that the district court erred in awarding a risk multiplier, departed from the views of the plurality in certain respects. First, Justice O'Connor adopted the view of the four dissenting Justices that risk of loss, in appropriate cases, could be considered in computing reasonable attorneys' fees. *Id.* at ——, 107 S.Ct. at 3089 (O'Connor, J., concurring in part). Second, Justice O'Connor agreed with the dissenters "that compensation for contingency must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the riskiness of any particular case." *Id.*

Nevertheless, Justice O'Connor sided with the plurality in holding that "novelty and difficulty of the issues presented, and ... potential for protracted litigation," are factors presumably reflected in the lodestar and cannot be utilized to justify a risk enhancement. *Id.* Concurring with the plurality, she reiterated that no risk en-

hancement is awardable unless a plaintiff establishes that but for the promise of an enhanced fee, the plaintiff would have encountered great difficulty in securing competent counsel in the relevant legal market. *Id.* at ——, 107 S.Ct. at 3091 (O'Connor, J., concurring in part). Justice O'Connor instructed district courts to treat contingency cases as a class and determine how the market in the relevant legal community compensates for assuming the risk of loss. The burden of showing that the lodestar figure is insufficient to attract effective counsel, the Justice emphasized, falls on the party seeking the enhancement. *Id.* Unless a risk premium is necessary to attract competent counsel, Justice O'Connor opinioned that one should not be granted. *Id.* Because the district court based its enhancement on legal and other risks unique to the case and did not explore what level of additional compensation was necessary in the relevant market to attract competent counsel, Justice O'Connor determined the district court's multiplier award was improper. *Id.* As such, the district court's award of a multiplier for risk of nonpayment was reversed.

## C. *Delay in Payment*

Plaintiffs first seek an upward adjustment to the lodestar for delay in payment. Essentially, plaintiffs argue that this court's decision in *Shakman IV* to calculate the lodestar using present hourly rates rather than historical rates with an adjustment fails to adequately compensate counsel for the delay in payment endured. According to plaintiffs, a substantial adjust-

ment is necessary to approximate, in present value terms, payments at historical hourly rates. This additional adjustment, plaintiffs contend, is necessary to produce a reasonably compensatory fee.

■ Clearly, plaintiffs are entitled to an adjustment to offset inflation and the time value of money.[7] The Supreme Court in *Delaware Valley II* unequivocally stated that adjustments for delay in payment are consistent with the statutory purpose of awarding reasonable attorneys' fees to prevailing parties. *Delaware Valley II,* —— U.S. at ——, 107 S.Ct. at 3081–82. Thus, the issue becomes whether the use of current hourly rates is sufficient to compensate plaintiffs' attorneys for inflation and the time value of money.

■ In *Shakman IV* this court considered parties' arguments only with regard to setting the lodestar or base amount, (i.e., hours reasonably spent times a reasonable hourly rate). Whether any upward adjustment to the lodestar would be awarded was reserved for determination at a later date. *See Shakman IV,* 634 F.Supp. at 905. Plaintiffs urged in *Shakman IV* that current rather than historical hourly rates be used as the first step in adjusting for inflation and the time value of money. Given that plaintiffs' counsel had not received any compensation for their work throughout the 17–year pendency of the *Shakman* litigation, this court computed the lodestar amount using current hourly rates to help compensate for the delay in payment.[8] Apparently, be-

---

7. The Seventh Circuit recognizes that delay in the consideration of payment involves two factors: inflation *and* the time value of money. *See Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646, 651 n. 3, 660, 662–64 (1985). Defendants' arguments concerning a proper adjustment for delay fail to recognize the later factor. Although this court has the discretion to adjust for delay solely on the basis of inflation, it is empowered to also consider the time value of money in arriving at an appropriate adjustment. As the Seventh Circuit has noted on several occasions, a district court may compensate for delay by "a computation of interest [or] a percentage allowance for inflation...." *Ohio–Sealy Mattress,* 776 F.2d at 663; *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 764 n. 6 (7th Cir. 1982). Given the substantial period of delay

experienced in this case, simply adjusting the lodestar for inflation will not produce a fee sufficient to induce competent attorneys to accept cases of a similar nature in the future. As such, the adjustment for delay in payment in this case will be based on inflation and the time value of money.

8. Defendants' contention that plaintiffs' failure to submit a petition for interim fees in 1976 (upon enactment of Section 1988) forecloses any adjustment for delay is unpersuasive and without support in the case law. Moreover, such an argument makes little economic sense. A similar argument was considered and rejected by the Seventh Circuit in *Gautreaux v. Chicago Housing Authority,* 690 F.2d 601, 612–13 (7th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct.

cause the question of multipliers was reserved for subsequent determination, plaintiffs did not ask for the additional enhancement necessary to approximate the present value of legal fees incurred. Whether an additional adjustment for delay is allowable and necessary is the first issue this court must address.

If one begins with the view that plaintiffs' counsel are entitled to a certain upward adjustment for inflation and the time value of money when a substantial delay in payment is experienced, whether that adjustment is awarded in one step or two is unimportant.[9] The critical issue is whether adjustment for these two factors accurately reflects what the attorneys would have realized had they been paid on a regular basis for their work. However, in making such adjustments, special care must be taken to avoid compensating for the same factors twice. See Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc., 776 F.2d 646, 651 n. 3 (7th Cir.1985).

Plaintiffs submit calculations designed to reflect the present value of fees due their attorneys. After multiplying the hours deemed allowable in each month by the then current hourly rate, plaintiffs add an enhancement based on the cost of borrowing such funds from a financial institution. The borrowing rate used by plaintiffs is the prime rate existing at the end of each month fees were due plus ¾%. The proposed interest rate is said to approximate the borrowing rate for law firms with high credit ratings. This adjustment for inflation and the time value of money is urged by plaintiffs because such a rate most closely replicates the actual cost sustained by plaintiffs' counsel. Plaintiffs contend that since their counsel devoted substantial hours each month for which reasonably prompt payment was not forthcoming, their attorneys were forced to use or "borrow" capital to meet costs of practicing law. The most reasonable method of computing the cost of using capital during the period of delay, plaintiffs argue, is the borrowing cost their attorneys would have incurred had they actually secured loans for the fees due. Calculation of present value on any other basis, plaintiffs conclude, would not properly compensate counsel for the 17–year delay in payment experienced.

Defendants, however, point out certain defects in plaintiffs' method of computing present value. First, defendants note that according to plaintiffs' logic, an attorney at a law firm with an excellent credit rating that could borrow funds at ¾% over the prime rate could demand such an adjustment on delayed fee payments. Yet, an attorney at a law firm with a poor credit rating that could only borrow money at a cost of 3% or 4% over prime would be entitled to a greater adjustment for delay. Such a method of compensating for delay, defendants observe, leads to substantial and arbitrary differences in amounts received by attorneys based on the credit worthiness of their firm.

Second, defendants note that if one accepts the proposition that delay in payment necessitates an investment of capital by a plaintiff's attorney, the proper measure of present value is the rate at which the capital could have been safely invested. Defendants argue that since banks lend money at a rate greater than that offered to depositors to invest, compensating a plaintiff's attorney at the cost of borrowing funds rather than the rate he or she could expect to receive on a safe and reliable investment results in an unjustifiable windfall. Instead, defendants assert a more realistic method would involve the use of some rate lower than the prime to compute the present value of fees due.

This court agrees. From a policy perspective, adopting the approach advocated by plaintiffs would result in widely disparate adjustments depending on the credit-worthiness of the prevailing party's attor-

---

2438, 77 L.Ed.2d 1322 (1983). Finding the reasoning in Gautreaux applicable to the present case, this court is unable to accept defendants' arguments on this point.

9. Contrary to defendants' assertions, authority exists for using current hourly rates plus a multiplier to adjust for delay in payment. See Environmental Defense Fund, Inc. v. Environmental Protection Agency, 672 F.2d 42, 60 (D.C.Cir. 1982).

neys. Additionally, this approach would involve a certain degree of speculation since a law firm's credit rating changes over time and attorneys may associate themselves with different firms during the pendency of the case. Collecting and verifying this credit information in many cases would be difficult and time consuming, if not impossible. Since time reasonably spent on fee petitions is compensable under § 1988, sanctioning such an approach would lead to substantial fee awards for work having little if anything to do with vindicating a plaintiff's civil rights.

Although plaintiffs assert that using the rate of return on conservative investments such as government securities does not sufficiently compensate plaintiffs' attorneys for their investment in plaintiffs' case, this argument is unpersuasive. *Delaware Valley II* teaches that delay in payment and risk of loss are distinct concepts for adjusting the lodestar and require separate analyses. As such, the riskiness of "investing" in plaintiffs' case cannot be considered when adjusting for inflation and the time value of money. *Delaware Valley II*, — U.S. at —, 107 S.Ct. at 3081–82. Finally, this court doubts whether the method plaintiffs propose for compensating for delay is necessary to induce competent attorneys to accept cases covered by fee shifting statutes.

Since this court has already determined that the adjustment for delay in payment will be made for both inflation and the time value of money, an appropriate and objective basis for calculating this adjustment is the interest rate applicable to short term Treasury bills. Such an approach is consistent with the method adopted in 28 U.S. C. § 1961 for computing interest allowable on money judgments recovered in district courts and provides a reasonably accurate measure of inflation and the time value of money.

Using the average annual yield on three-month Treasury bills, this court computed the accumulated present value of historical fees due each of plaintiffs' attorneys as of November 30, 1987. *See* Appendices B–E.[10] Comparing the accumulated present value of fees for plaintiffs' attorneys to the lodestar amount derived in *Shakman IV* by using current hourly rates times hours reasonably spent, a mild adjustment for delay in payment is necessary. *See* Appendix A. Thus, this court awards an additional adjustment of 5.9% to the lodestar bringing the new base amount for the designated attorneys to $897,482. The additional fee enhancement is to be divided among plaintiffs' attorneys as indicated in Appendix A.

### D. *Exceptional Efficiency and Lost Opportunities*

Plaintiffs next assert that the exceptional efficiency in which their attorneys handled this case resulted in an extraordinary low number of hours charged for the work completed and that an upward adjustment is required to adequately compensate counsel. Plaintiffs also argue that

10. The mechanics of the present value computations found in Appendices B–E are as follows: Column A and B set forth the year and month in which the work in question was completed. Column C contains the actual billing rate for the attorney in question for the month and year the work was actually done. In Column D the total number of hours which the attorney in question worked during each month of each year is recorded. The contemporaneous payment amount stated in Column E is computed by multiplying the applicable billing rate (Column C) by the total number of monthly hours (Column D). Column F represents the annual average interest rate for three-month Treasury bills in terms of a monthly multiplier. Rates for 1969–1980 are taken from the *Survey of Current Business* and *Business Statistics,* the biennial supplement to the *Survey of Current Business,* both of which are published by the United States Department of Commerce. Data for 1981–1987 are taken from *Economic Indicators,* a publication prepared by the Council of Economic Advisors for the Joint Economic Committee, and the *Wall Street Journal.* Column G contains the monthly adjustment for inflation and the time value of money. This amount is ascertained by multiplying the previous month's accumulated value by the applicable Treasury bill rate (Column F). Column H represents the accumulated present value which is derived by adding (1) the monthly contemporaneous payment amount (Column E) with (2) the previous month's accumulated present value (Column H), and (3) the present month's adjustment for inflation and the time value of money (Column G).

their attorneys' 17–year involvement with this case caused them to forego other, more lucrative opportunities. Plaintiffs thus contend a fee enhancement for lost opportunities is appropriate in this case. These arguments will be addressed in turn.

With regard to exceptional efficiency, plaintiffs claim that in comparison with other large scale class action cases, the staffing of this case was extremely light and the number of hours billed for several projects extremely low. Additionally, the frequent practice of entering into stipulations and settlements with defendants is highlighted by plaintiffs to emphasize their attorneys' strategies in managing this case resulted in extraordinary economies by conserving chargeable time. Had the case progressed in a more adversarial mode, plaintiffs point out that a substantial number of hours would have been expended in discovery and trial preparation resulting in a significantly higher lodestar figure.

First, difficulty exists with attributing the savings resulting from the practice of stipulation and settlement exclusively to plaintiffs. Defendants correctly point out that they, at least as much as plaintiffs, are responsible for this practice and the resulting time savings. The record makes clear that both sides' willingness to resolve the issues in this case without a trial is the reason a substantial amount of attorney time was saved. As this court previously observed in *Shakman II,* "the parties, in an admirable spirit of conciliation, have endeavored to put this case in a position where the court could resolve it without the necessity of a public trial." *Shakman II,* 481 F.Supp. at 1355. To award a multiplier based on such a consideration would result in a penalty to the defendants for their cooperative efforts and is therefore inappropriate.

Examining plaintiffs' remaining justifications for an efficiency multiplier in light of the Supreme Court's pronouncements in *Delaware Valley I* indicates fee enhancement for such factors is improper. "[W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests." *Delaware Valley I,* 478 U.S. at ——, 106 S.Ct. at 3098. In discharging his "obligation to perform to the best of his ability," an attorney is duty bound to spend his time efficiently and not devote more resources to a matter than are necessary "to produce the best possible results commensurate with ... his client's interests." *Id.* Efficiency in staffing a case and performing work is a consideration which is generally subsumed in the hourly rate awarded to compute the lodestar. To eliminate the danger of "double counting," it should not be used to justify an enhancement to the lodestar. *Id.* at ——, 106 S.Ct. at 3099. As such, this court denies plaintiffs' request for an efficiency multiplier.

In their argument concerning lost opportunities, plaintiffs first assert an upward adjustment to the lodestar is necessary to compensate plaintiffs' attorneys for the undesirable nature of the case which caused the alienation of potential clients who would have otherwise hired plaintiffs' attorneys. Plaintiffs also contend an enhancement is required because their attorneys' work on this case precluded them from accepting and developing engagements with clients possessing the need for future or repeated legal work. Since these attorneys normally charge clients who exhibit no potential for future employment a 10% to 15% premium above their normal hourly rate, a commensurate adjustment is asked for by plaintiffs to adequately compensate their attorneys.

A careful reading of affidavits submitted by plaintiffs' attorneys, however, reveals no actual evidence that any business opportunities were lost due to their involvement in this case. Indeed, the affidavit of plaintiffs' expert, Lowell Sachnoff, affirmatively states: "It is impossible to know with any certainty what clients or potential clients did not come to plaintiffs' counsel for legal representation because of their representation of plaintiffs in the *Shakman* case." Sachnoff Aff. II, ¶ 4, p. 10.

Assuming consideration of this factor remains a viable basis for enhancing the lodestar after the *Delaware Valley* decisions, specific evidence must exist that the undesirability resulted in some damage to plaintiffs attorneys' practice. Here, no such evidence is presented. Quite to the contrary, counsel's involvement in the *Shakman* litigation has arguably enhanced their reputation in the legal community. Moreover, this court entertains little doubt that a primary motivation for counsel's representation of plaintiffs in this case was the opportunity to dismantle the long-standing patronage practices of Democratic and Republican Party organizations in the Northern District of Illinois. Although possibly undesirable for defendants, the nature of this case most likely supplied plaintiffs' counsel with the incentive to persevere. Thus, a fee enhancement for undesirability is inappropriate.

This court is also unable to agree with plaintiffs' contention that because counsels' representation in *Shakman* did not possess the potential for future business, a fee enhancement is necessary. As defendants note, counsel has been working on *Shakman* for more than 17 years. A longer attorney-client relationship is simply hard to imagine. Additionally, even if plaintiffs' attorneys normally charge a premium for conducting isolated litigation, such a consideration should have been articulated when the issue of reasonable hourly fees was addressed. As such, this court is unsympathetic to plaintiffs' request for upward adjustment based on limited nature of counsel's employ with the *Shakman* plaintiffs.

### E. *Successful Results*

■ Plaintiffs argue that in light of the nature of this case and the successful results achieved, a substantial adjustment to the lodestar is necessary to produce a reasonably compensatory fee. Citing excerpts from the Supreme Court's opinions in *Delaware Valley I*, *Blum*, and *Hensley*, plaintiffs contend the law is clear that fee awards under § 1988 may be adjusted to reflect the results obtained. Although recognizing that the Supreme Court's most

recent pronouncements in *Delaware Valley I* and *Blum* limit adjustments for successful results to only "rare and exceptional cases," plaintiffs assert the successful results of this case are sufficiently extraordinary to warrant an upward adjustment to the lodestar.

No doubt exists the Supreme Court in *Delaware Valley I* sought to discourage district courts from awarding enhancements for successful results, emphasizing that the product of reasonable hours times a reasonable hourly rate will presumably compensate counsel in full for their services. The Court instructed that considerations such as quality of representation and results obtained "ordinarily should not be used to adjust the lodestar, thus removing any danger of double counting." *Delaware Valley I*, at ——, 106 S.Ct. at 3098–99. In fact, as the defendants note, the Seventh Circuit has recently observed that the Supreme Court's position in *Delaware Valley I* leaves little doubt that enhancements for exceptional success are disfavored. *In re Burlington Northern, Inc. Employment Practices Litigation*, 803 F.2d 279, 285 (7th Cir.1986).

Yet, it is equally clear that the Court did not intend to preclude upward adjustments for successful results in all cases. Success multipliers, the Court stated, "are still permissible," … but "proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts." *Delaware Valley I*, 478 U.S. at ——, 106 S.Ct. at 3098 (*citing Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–50).

Considering the submissions presented by plaintiffs in support of a success multiplier and the insights derived by this court's extensive involvement with this case, this court is convinced that the standards set forth by the Supreme Court for a success enhancement are met. Simply put, in the twenty-four years during which I have served as a judge, I have never presided over a case with greater significance or more widefelt impact in the area of civil rights than *Shakman*. Prior to the filing of this action, the defendants and their

political organizations used coercion in the form of threats of nonemployment, demotion or termination to gather substantial if not decisive political support for themselves and their organizations' candidates. As noted by certain defendants in prior submissions:

> As a direct result of [*Shakman*] and *Elrod v. Burns*, patronage precinct workers in Cook County have now fragmented into free agents, able to work voluntarily and freely for any candidate they wish, not just those slated by the regular Democrats. Thus, independent candidates now have an indisputably equal chance at carrying the city of Chicago and suburban Cook County and their supporters have an equally effective voice in determining election results.

Brief for Defendants—Appellants Dunne, Hynes, Kusper and Forest Preserve of Cook County, dated October 4, 1985, at 50–51.

The success achieved in *Shakman* now ensures that the electoral process in Illinois will no longer be subjected to the misuse of governmental power over public employees and job applicants that once served to tip the electoral scale in favor of the incumbent political group. As previously noted by this court in *Shakman II*, resolution of the substantive claims asserted by plaintiffs could not be accomplished by a mechanical application of prior case law. *Shakman II*, 481 F.Supp. at 1327–28. Imagination and creativity on the part of plaintiffs' counsel were necessary to fashion arguments persuasive enough to invoke judicial protection of constitutional rights which previously had not been clearly recognized by the courts. *Shakman* has enhanced the ability of independent candidates to run for office and of voters to associate freely and express their opinions regarding the candidates. This case has resulted in the application of fundamental constitutional principles to protect the basic functioning of the democratic system in the Northern District of Illinois. This court agrees with plaintiffs assessment that no higher value can be ascribed to any result than the protection of a fundamentally fair electoral process.

*Shakman* has also resulted in freeing tens of thousands of public employees and countless job applicants from coercion with regard to political support, campaign work and financial contributions. The relief obtained by plaintiffs affects over 70,000 governmental employees. This litigation has given rise to a new class of equitable actions in the Northern District of Illinois known as *Shakman* petitions. Through this judicial procedure, individuals claiming violation of *Shakman* judgments or decrees are provided with a federal forum for protecting their constitutional rights to be free from political coercion in public employment. During the course of this court's supervision of this case, hundreds of petitions were filed claiming noncompliance with the *Shakman* decrees and judgments. Hearings on these petitions were routinely conducted by this court shortly after the actions were initiated and in a substantial number of instances, resulted in an order of relief for the petitioner.

Aside from its enormous political and social impact, the results in this case have had a significant economic impact on the operations of the defendant governmental employers. Statements by Dr. Charles Pounian, Commissioner of Personnel for the defendant City of Chicago from 1960–1985, and by the late Mayor of the City of Chicago, Harold Washington, lead this court to conclude that *Shakman* has resulted in considerable budgetary savings for the defendant employers. In his affidavit, Dr. Pounian lists the following reasons the results in *Shakman* led to a less costly and more productive work force for the defendant City of Chicago:

(a) While there are many pressures to add jobs to the various City departments, the application of job-related criteria in filling the non-exempt positions as a result of the 1983 consent decree should sharply reduce political hiring as a cause of unnecessary hiring, except for positions exempted from the decree.

(b) At the time I left my position as Commissioner of Personnel in 1985, the City was hiring, in general, more highly qualified employees than it was prior to

the hiring consent decree. Among the reasons for this are:

(i) The decree requires broader public notice of jobs to be given. This results in a larger pool of applicants and consequently allows a better choice for selection.

(ii) Many qualified persons, who otherwise would not have been interested in City jobs, were interested in and applied for those jobs because they believed that the jobs would not be conditioned on political support and other non-merit factors.

(iii) The development of the Plan of Compliance included the establishment of hiring criteria for all non-exempted positions. It had the effect of extending career service procedures to all covered positions and it directed attention to what should be the focus of hiring—the selection of applicants based on job related criteria.

(iv) As a result of the uniform application of job-related criteria in selection, the City's work force was, at the time I resigned as Commissioner of Personnel on July 1, 1985, better qualified than prior to the entry of the decree. This improvement in the overall level of new employees, which resulted from the extension of merit system hiring practices, has created the potential for substantial improvement in the performance of the City work force. While this potential is dependent on strong executive leadership and good managers in the various City departments, the cost savings should be significant.

(v) The decree reinforced the provisions of the Personnel Ordinance limiting the use of provisional appointments and thereby strengthening the merit system. The combination of the decree and the Personnel Ordinance provide for the basis of an excellent system of merit hiring and promotion.

Pounian Aff., ¶¶ 9(a), 9(b).

In Dr. Pounian's judgment, these benefits have made available cost savings, just to the defendant City of Chicago alone, in an amount in excess of $150,000,000 during the ten-year duration of the Implementation Plan. Dr. Pounian observes:

> It is, of course, difficult to assess with precision the amount in dollars of the cost savings to the City which the consent decrees in the *Shakman* case have brought about. Nonetheless, it is clear that the potential cost savings to the City is substantial. At the time I left the City, its total employee expense per year was approximately $1.1 billion, of which approximately 30% related to jobs that formerly were non-merit [patronage] system jobs. I believe that the consent decree, by improving the quality of the available pool of applicants and by extending merit as the basis of employment decisions, substantially improved, and, with proper and effective management, can continue to improve productivity. I believe that, on a very conservative assumption, the improvement in productivity will be not less than 5%. Assuming a 5% improvement in productivity in the group formerly hired on non-merit system factors, this potential improvement could result in savings of well over $15 million per year.

Pounian Aff., ¶ 10.

By virtue of his many years of experience as Commissioner of Personnel, Dr. Pounian believes that savings similar to those realized by the City have been realized by other defendants as a result of implementation of the consent decree. *Id.* at ¶ 11. If, as Dr. Pounian suggests, these savings are similar, the total economic benefit to defendants will exceed $250 million.

Although plaintiffs are careful to point out that Dr. Pounian's affidavit is not submitted to establish with numerical precision the exact monetary effect of the outcome in this case, Dr. Pounian's observations are nonetheless recited by this court to underscore the fact that *Shakman* has resulted in significant budgetary savings for the defendant employers.

Testifying before this court during fairness hearings regarding the consent decree, the late Mayor Harold Washington commented that as a result of *Shakman*:

the cost of government would be lowered to a great extent because ... many city employees simply do not cut the mustard. There are certain instances in which you have more than enough employees doing a single job. There is a degree of inefficiency, not rampant, not manifest, but it's there. It can be seen, it can be observed, it has been chronicled by the press, by others.

It would improve city management. It is very difficult, for example, for even a superintendent to discipline a subordinate who is in favor or closely connected with a strong Ward Committeeman. By the same token, it is difficult for some Committeemen to vice [sic] certain employees who are strong with members of the Party. It would give, I think, a better sense of management. It would remove politics in that sense from City Government.

 \* \* \* \* \* \*

And, lastly, I think this Judgment would once and for all guarantee that the policymakers starting with the Mayor of this city and his immediate policymaking subordinates could extract a day's work for a day's pay from every city employee. And that, to me, is the bottom line. It cannot do it under the circumstances.

Transcript of Fairness Proceedings, June 20, 1983, at 24–27.

The foregoing observations of the late Mayor Washington and Dr. Pounian are quite persuasive. No one could be in a better position to evaluate the cost savings benefits of *Shakman* than the Mayor of the City of Chicago, and the head of the city's personnel department from 1960 to 1985. Although precise data concerning exact savings resulting from *Shakman* are not available, this court credits their conclusions that substantial budgetary econo-

mies are attributable to the outcome of this case. Though the resulting savings in employment costs immediately benefited the defendant employers, the plaintiff class of taxpayers are also directly advantaged by these efficiencies. Viewed collectively, the *Shakman* case has resulted in substantial political, social and economic benefits not only for members of the plaintiff classes, but also for all who are affected by the public officers and entities named as defendants in this action.

Although the Seventh Circuit recently reversed the portion of *Shakman* dealing with partisan hiring practices, this decision has not seriously diminished the success achieved by plaintiffs in this case. First, the Seventh Circuit's ruling in *Shakman III* does not affect the disparate treatment and termination aspects of the *Shakman* decrees. Second, a substantial number of defendants bound by the ruling in *Shakman II* declined to appeal. Thus, to a large extent, the success plaintiffs obtained in *Shakman II* regarding partisan hiring remains intact.[11]

In light of the preceding discussion, this court concludes the results achieved in *Shakman* are sufficiently extraordinary to place this case in the class of rare and exceptional cases for which success enhancements are reserved.

The proper method of selecting a success multiplier is to compare the lodestar to the results obtained. *Hensley,* 461 U.S. at 437–40, 103 S.Ct. at 1941–43. An upward adjustment is proper where the lodestar is significantly lower than the results would warrant, given fee awards in cases where equally successful results were achieved. *Delaware Valley I,* 478 U.S. at ——, 106 S.Ct. at 3099–3100. Comparing the lodestar to the size and nature of benefits resulting from the outcome in *Shakman,* the base amount appears to be substantial-

---

**11.** Since plaintiffs' present fee petition does not include any time expended on the appeal resulting in the reversal of *Shakman II,* application of a success multiplier does not reward plaintiffs' counsel for work on aspects of this case in which plaintiffs did not prevail. With certain conditions, *Shakman IV* imposed joint and several liability on defendants to pay plaintiffs' legal fees. *Shakman IV,* 634 F.Supp. at 904.

Thus, the fact certain defendants will not be obligated to pay a portion of those fees because of their success in appealing *Shakman II* does not affect plaintiffs' entitlement to the fees requested in their petition. However, the fact that plaintiffs did not prevail in *Shakman III* is a consideration which this court weighs in determining the propriety of plaintiffs' request for a success enhancement.

ly lower in relative terms than awards in cases with comparable successes. While not small in absolute terms, the lodestar is comparatively modest in relation to fee awards involving similarly large economic benefits. *See, e.g., Liberles v. Daniel,* 619 F.Supp. 1016, 1019–22 (N.D.Ill.1985) (application of a multiplier of 1.5 results in a $451,000 award in an action involving $13 million in benefits); *Brewer v. Southern Union Co.,* 607 F.Supp. 1511 (D.Colo.1984) (application of multipliers ranging from 3.35 to 1.5 results in fee award of over $8 million where benefit totaled less than $75 million); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, slip op. at 16 (Sept. 14, 1984) (application of 1.41 multiplier results in a fee award $785,000 where potential economic benefit ranged from $2.75 million to $10 million); *Monroe v. United Airlines,* 565 F.Supp. 274, 279–80 (N.D.Ill.1983) (use of a 1.6 multiplier leads to total fee award of nearly $1.3 million where benefit totaled $18 million). As such, this court awards a fee enhancement equal to one third of the lodestar. Although this enhancement is lower than many awarded in cases with comparable results, this court expresses confidence that a 1.333 multiplier will produce a reasonably compensatory fee in light of the success achieved in this case and serve as a sufficient inducement for competent attorneys to accept cases of a similar import in the future.

### F. *Risk of Nonpayment*

■ Finally, plaintiffs assert that the risk of nonpayment assumed by plaintiffs' attorneys in accepting this case requires an upward adjustment to the lodestar. Plaintiffs note that a contingent fee arrangement existed in this case. Merely compensating for the hours their attorneys reasonably expended litigating this matter, plaintiffs argue, is insufficient to adequately compensate for the substantial risk of nonpayment plaintiffs' attorneys assumed. Since attorneys generally charge a premium for accepting cases on a contingency fee basis, plaintiffs urge that a substantial upward adjustment to the lodestar is necessary to produce a reasonable fee.

After the parties completed submitting arguments on this issue, the decision in *Delaware Valley II* addressing the propriety of awarding risk multipliers was handed down. As detailed in Part II B of this opinion, a four-member plurality determined in that case that upward adjustments for risk are not permissible under typical fee shifting statutes. *Delaware Valley II,* 478 U.S. at ——, 107 S.Ct. at 3087. However, because four dissenting justices and one concurring justice were of the view that Congress did not intend to foreclose consideration of risk of nonpayment in setting fee awards under fee shifting statutes, the plurality was compelled to articulate conditions under which such multipliers could be properly awarded. One condition imposed by the plurality and adopted by Justice O'Connor in her concurring opinion is the requirement that evidence be submitted and findings be made that "without risk-enhancement, plaintiffs would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at ——, 107 S.Ct. at 3089.

Although plaintiffs' submissions on the risk of nonpayment issue predated the ruling in *Delaware Valley II,* this court entertains serious doubt that plaintiffs could offer convincing evidence on the mentioned requirement. Simply put, this court believes that plaintiffs' counsel would have accepted this case without any promise of a risk enhancement. Plaintiffs' class representatives, Michael Shakman and Paul Lurie were close personal friends of the lawyers who agreed to represent plaintiffs in this action. In fact, three of the four attorneys for whom risk multipliers are sought attended law school together. It was the nature of this case and the personal relationship between the named plaintiffs and their attorneys that motivated counsel to accept this case, not the promise of a risk multiplier.

Moreover, both named plaintiffs were themselves attorneys in 1969 when this action was initiated. Had they been unsuccessful in enlisting the help of their law school friends, little doubt exists that Shakman and Lurie would have proceeded *pro*

*se* at least until class certification was granted and serious settlement negotiations were begun with defendants in 1971. It is simply not the case that "without risk-enhancement, plaintiff[s] would have faced substantial difficulties in finding counsel in the local or relevant market." As such, plaintiffs' motion for a risk multiplier is denied.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for an adjustment to the fees awarded to attorneys Shakman, Johnson, Plotkin and Fross is granted in part and denied in part. This court awards a multiplier of 1.059 to adjust for delay in payment, increasing the base amount or lodestar for the noted attorneys to $897,482 from $847,-403. *See* Appendix A, Table I. This court also awards a 1.333 multiplier for successful results increasing the total award to the four attorneys by $298,862 to $1,196,344. *See* Appendix A, Table II. Plaintiffs' requests for fee enhancement on the grounds of efficiency, lost opportunity and risk of nonpayment, however, are denied. Thus, with the $36,102 in fees awarded to plaintiffs' other attorneys in *Shakman IV*, 634 F.Supp. at 909, the total fee award is $1,232,466.[12] *See* Appendix A, Table III.

IT IS SO ORDERED.

12. This court expresses its appreciation to Larry D. Appelson and Ted C. Newman, administrative analysts employed with the Office of the Clerk of Court, for preparing the statistical analyses contained in Appendices A–E.

## APPENDIX A

### I. Adjustment for Delay in Payment

| Attorney | Base Amount Per Shakman IV | Total Fees Using Contemporaneous Payment Amounts and Accumulated Present Values (Per Column H) | Adjustment $ | % |
|---|---|---|---|---|
| Mr. Shakman | $ 39,125 | $ 42,485 | $ 3,360 | 8.6% |
| Mr. Johnson | 466,001 | 498,393 | 32,392 | 7.0% |
| Mr. Plotkin | 150,347 | 151,627 | 1,280 | 0.9% |
| Mr. Fross | 191,840 | 204,977 | 13,137 | 6.8% |
| TOTAL | $847,403 | $897,482 | $50,079 | 5.9% |

### II. Adjustment for Successful Results

| Attorney | Adjusted Base Amount | Adjustment % | Adjustment $ | Fee Award |
|---|---|---|---|---|
| Mr. Shakman | $ 42,485 | 33.3% | $ 14,148 | $ 56,633 |
| Mr. Johnson | 498,393 | 33.3% | 165,965 | 664,358 |
| Mr. Plotkin | 151,627 | 33.3% | 50,492 | 202,119 |
| Mr. Fross | 204,977 | 33.3% | 68,257 | 273,234 |
| TOTAL | $897,482 | 33.3% | $298,862 | $1,196,344 |

### III. Total Fee Award

Fee award for plaintiffs' remaining attorneys ............. $ 36,102*

Fee award for attorneys Shakman, Johnson,
 Plotkin and Fross ................................... 1,196,344

TOTAL FEE AWARD ......................................... $1,232,466

* This figure is the sum of fees due attorneys other than those listed above. See supra note 2.

## APPENDIX B
### ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

ATTORNEY: Shakman

| (A) Year | (B) Month | (C) Billing Rate | (D) Monthly Hours | (E) [(C) x (D)] Contemporaneous Payment Amount | (F) Three # Month T-Bill Rate | (G) Previous Month's Accumulated Value x Current Month's T-Bill Rate | (H) Accumulated Present Value |
|---|---|---|---|---|---|---|---|
| 1969 | Aug. | | | | 0.556% | | |
| | Sept. | 30.00 | 0.00 | | 0.556% | | |
| | Oct. | 30.00 | 0.00 | $0 | 0.556% | $0.00 | $0 |
| | Nov. | 30.00 | 0.00 | $0 | 0.556% | $0.00 | $0 |
| | Dec. | 30.00 | 0.00 | $0 | 0.556% | $0.00 | $0 |
| | | | 0.00 | $0 | 6.677% | $0.00 | |
| 1970 | Jan. | 35.00 | 1.90 | $67 | 0.538% | $0.00 | $67 |
| | Feb. | 35.00 | 0.40 | $14 | 0.538% | $0.36 | $81 |
| | March | 35.00 | 0.00 | $0 | 0.538% | $0.44 | $82 |
| | Apr. | 35.00 | 0.00 | $0 | 0.538% | $0.44 | $82 |
| | May | 35.00 | 0.00 | $0 | 0.538% | $0.44 | $83 |
| | June | 35.00 | 0.00 | $0 | 0.538% | $0.44 | $83 |
| | July | 35.00 | 0.00 | $0 | 0.538% | $0.45 | $84 |
| | Aug. | 35.00 | 0.00 | $0 | 0.538% | $0.45 | $84 |
| | Sept. | 35.00 | 0.00 | $0 | 0.538% | $0.45 | $84 |
| | Oct. | 35.00 | 0.00 | $0 | 0.538% | $0.45 | $85 |
| | Nov. | 35.00 | 1.40 | $49 | 0.538% | $0.46 | $134 |
| | Dec. | 35.00 | 0.00 | $0 | 0.538% | $0.72 | $135 |
| | | | 3.70 | $130 | 6.458% | | |
| 1971 | Jan. | 40.00 | 0.00 | $0 | 0.362% | $0.49 | $136 |
| | Feb. | 40.00 | 0.00 | $0 | 0.362% | $0.49 | $136 |
| | March | 40.00 | 5.50 | $220 | 0.362% | $0.49 | $357 |
| | Apr. | 40.00 | 2.20 | $88 | 0.362% | $1.29 | $446 |
| | May | 40.00 | 0.00 | $0 | 0.362% | $1.62 | $447 |
| | June | 40.00 | 13.40 | $536 | 0.362% | $1.62 | $985 |
| | July | 40.00 | 7.80 | $312 | 0.362% | $3.57 | $1,301 |
| | Aug. | 40.00 | 7.60 | $304 | 0.362% | $4.71 | $1,609 |
| | Sept. | 40.00 | 0.00 | $0 | 0.362% | $5.83 | $1,615 |
| | Oct. | 40.00 | 7.90 | $316 | 0.362% | $5.85 | $1,937 |
| | Nov. | 40.00 | 4.70 | $188 | 0.362% | $7.02 | $2,132 |
| | Dec. | 40.00 | 1.20 | $48 | 0.362% | $7.73 | $2,188 |
| | | | 50.30 | $2,012 | 4.348% | | |
| 1972 | Jan. | 45.00 | 0.00 | $0 | 0.339% | $7.42 | $2,195 |
| | Feb. | 45.00 | 0.00 | $0 | 0.339% | $7.45 | $2,203 |
| | March | 45.00 | 1.50 | $68 | 0.339% | $7.47 | $2,278 |
| | Apr. | 45.00 | 18.80 | $846 | 0.339% | $7.73 | $3,131 |
| | May | 45.00 | 3.40 | $153 | 0.339% | $10.62 | $3,295 |
| | June | 45.00 | 0.30 | $14 | 0.339% | $11.18 | $3,320 |
| | July | 45.00 | 1.00 | $45 | 0.339% | $11.26 | $3,376 |
| | Aug. | 45.00 | 7.90 | $356 | 0.339% | $11.45 | $3,743 |
| | Sept. | 45.00 | 1.50 | $68 | 0.339% | $12.70 | $3,823 |

B-1

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|------|-------|-------|-------|--------|--------|--------|---------|
| | Oct. | 45.00 | 3.50 | $158 | 0.339% | $12.97 | $3,994 |
| | Nov. | 45.00 | 2.30 | $104 | 0.339% | $13.55 | $4,111 |
| | Dec. | 45.00 | 1.00 | $45 | 0.339% | $13.95 | $4,170 |
| | | | ------ | ------ | ------- | | |
| | | | 41.20 | $1,854 | 4.071% | | |
| | | | | | | | |
| 1973 | Jan. | 50.00 | 0.00 | $0 | 0.587% | $24.46 | $4,194 |
| | Feb. | 50.00 | 0.00 | $0 | 0.587% | $24.61 | $4,219 |
| | March | 50.00 | 1.00 | $50 | 0.587% | $24.75 | $4,293 |
| | Apr. | 50.00 | 0.00 | $0 | 0.587% | $25.19 | $4,319 |
| | May | 50.00 | 0.00 | $0 | 0.587% | $25.34 | $4,344 |
| | June | 50.00 | 0.00 | $0 | 0.587% | $25.49 | $4,369 |
| | July | 50.00 | 0.00 | $0 | 0.587% | $25.64 | $4,395 |
| | Aug. | 50.00 | 0.00 | $0 | 0.587% | $25.79 | $4,421 |
| | Sept. | 50.00 | 0.00 | $0 | 0.587% | $25.94 | $4,447 |
| | Oct. | 50.00 | 1.10 | $55 | 0.587% | $26.09 | $4,528 |
| | Nov. | 50.00 | 0.00 | $0 | 0.587% | $26.57 | $4,554 |
| | Dec. | 50.00 | 0.00 | $0 | 0.587% | $26.72 | $4,581 |
| | | | ------ | ------ | ------- | | |
| | | | 2.10 | $105 | 7.041% | | |
| | | | | | | | |
| 1974 | Jan. | 60.00 | 0.00 | $0 | 0.657% | $30.11 | $4,611 |
| | Feb. | 60.00 | 0.00 | $0 | 0.657% | $30.30 | $4,642 |
| | March | 60.00 | 0.00 | $0 | 0.657% | $30.50 | $4,672 |
| | Apr. | 60.00 | 0.00 | $0 | 0.657% | $30.70 | $4,703 |
| | May | 60.00 | 0.00 | $0 | 0.657% | $30.91 | $4,734 |
| | June | 60.00 | 0.00 | $0 | 0.657% | $31.11 | $4,765 |
| | July | 60.00 | 0.90 | $54 | 0.657% | $31.31 | $4,850 |
| | Aug. | 60.00 | 0.00 | $0 | 0.657% | $31.87 | $4,882 |
| | Sept. | 60.00 | 1.70 | $102 | 0.657% | $32.08 | $5,016 |
| | Oct. | 60.00 | 9.60 | $576 | 0.657% | $32.96 | $5,625 |
| | Nov. | 60.00 | 1.10 | $66 | 0.657% | $36.97 | $5,728 |
| | Dec. | 60.00 | 1.50 | $90 | 0.657% | $37.64 | $5,856 |
| | | | ------ | ------ | ------ | | |
| | | | 14.80 | $888 | 7.886% | | |
| | | | | | | | |
| 1975 | Jan. | 60.00 | 4.10 | $246 | 0.487% | $28.49 | $6,130 |
| | Feb. | 60.00 | 0.50 | $30 | 0.487% | $29.82 | $6,190 |
| | March | 60.00 | 4.10 | $246 | 0.487% | $30.11 | $6,466 |
| | Apr. | 60.00 | 14.50 | $870 | 0.487% | $31.46 | $7,368 |
| | May | 60.00 | 1.30 | $78 | 0.487% | $35.84 | $7,481 |
| | June | 60.00 | 0.70 | $42 | 0.487% | $36.40 | $7,560 |
| | July | 60.00 | 0.00 | $0 | 0.487% | $36.78 | $7,597 |
| | Aug. | 60.00 | 0.00 | $0 | 0.487% | $36.96 | $7,633 |
| | Sept. | 60.00 | 0.00 | $0 | 0.487% | $37.14 | $7,671 |
| | Oct. | 60.00 | 1.80 | $108 | 0.487% | $37.32 | $7,816 |
| | Nov. | 60.00 | 0.10 | $6 | 0.487% | $38.02 | $7,868 |
| | Dec. | 60.00 | 1.00 | $60 | 0.487% | $38.24 | $7,958 |
| | | | ------ | ------ | ------- | | |
| | | | 28.10 | $1,686 | 5.038% | | |
| | | | | | | | |
| 1976 | Jan. | 65.00 | 0.00 | $0 | 0.416% | $33.09 | $7,991 |
| | Feb. | 65.00 | 0.00 | $0 | 0.416% | $33.22 | $8,025 |
| | March | 65.00 | 0.00 | $0 | 0.416% | $33.36 | $8,058 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Apr. | 65.00 | 0.40 | $26 | 0.416% | $33.50 | $8,117 |
| | May | 65.00 | 0.00 | $0 | 0.416% | $33.75 | $8,151 |
| | June | 65.00 | 3.30 | $215 | 0.416% | $33.89 | $8,400 |
| | July | 65.00 | 0.00 | $0 | 0.416% | $34.92 | $8,434 |
| | Aug. | 65.00 | 0.00 | $0 | 0.416% | $35.07 | $8,470 |
| | Sept. | 65.00 | 0.80 | $52 | 0.416% | $35.21 | $8,557 |
| | Oct. | 65.00 | 0.20 | $13 | 0.416% | $35.57 | $8,605 |
| | Nov. | 65.00 | 0.00 | $0 | 0.416% | $35.70 | $8,641 |
| | Dec. | 65.00 | 0.00 | $0 | 0.416% | $35.93 | $8,677 |
| | | | ------ | ------ | ------ | | |
| | | | 4.70 | $306 | 4.989% | | |
| | | | | | | | |
| 1977 | Jan. | 75.00 | 0.00 | $0 | 0.439% | $38.07 | $8,715 |
| | Feb. | 75.00 | 0.00 | $0 | 0.439% | $38.24 | $8,753 |
| | March | 75.00 | 0.00 | $0 | 0.439% | $38.41 | $8,792 |
| | Apr. | 75.00 | 0.00 | $0 | 0.439% | $38.57 | $8,830 |
| | May | 75.00 | 2.20 | $165 | 0.439% | $38.74 | $9,034 |
| | June | 75.00 | 2.40 | $180 | 0.439% | $39.64 | $9,254 |
| | July | 75.00 | 1.00 | $75 | 0.439% | $40.60 | $9,369 |
| | Aug. | 75.00 | 1.00 | $75 | 0.439% | $41.11 | $9,405 |
| | Sept. | 75.00 | 0.00 | $0 | 0.439% | $41.62 | $9,527 |
| | Oct. | 75.00 | 0.20 | $15 | 0.439% | $41.80 | $9,584 |
| | Nov. | 75.00 | 0.00 | $0 | 0.439% | $42.05 | $9,626 |
| | Dec. | 75.00 | 0.30 | $23 | 0.439% | $42.23 | $9,691 |
| | | | ------ | ------ | ------ | | |
| | | | 7.10 | $533 | 5.265% | | |
| | | | | | | | |
| 1978 | Jan. | 75.00 | 3.00 | $225 | 0.602% | $59.31 | $9,974 |
| | Feb. | 75.00 | 0.00 | $0 | 0.602% | $60.02 | $10,034 |
| | March | 75.00 | 0.00 | $0 | 0.602% | $60.38 | $10,094 |
| | Apr. | 75.00 | 0.00 | $0 | 0.602% | $60.74 | $10,155 |
| | May | 75.00 | 0.60 | $45 | 0.602% | $61.11 | $10,261 |
| | June | 75.00 | 0.00 | $0 | 0.602% | $61.75 | $10,323 |
| | July | 85.00 | 0.60 | $51 | 0.602% | $62.12 | $10,436 |
| | Aug. | 85.00 | 0.50 | $43 | 0.602% | $62.88 | $10,541 |
| | Sept. | 85.00 | 0.00 | $0 | 0.602% | $63.43 | $10,605 |
| | Oct. | 85.00 | 0.00 | $0 | 0.602% | $63.81 | $10,669 |
| | Nov. | 85.00 | 0.00 | $0 | 0.602% | $64.20 | $10,733 |
| | Dec. | 85.00 | 0.60 | $51 | 0.602% | $64.58 | $10,848 |
| | | | ------ | ------ | ------ | | |
| | | | 5.30 | $415 | 7.221% | | |
| | | | | | | | |
| 1979 | Jan. | 85.00 | 0.00 | $0 | 0.837% | $90.77 | $10,939 |
| | Feb. | 85.00 | 0.00 | $0 | 0.837% | $91.53 | $11,031 |
| | March | 85.00 | 0.00 | $0 | 0.837% | $92.30 | $11,123 |
| | Apr. | 85.00 | 0.00 | $0 | 0.837% | $93.07 | $11,216 |
| | May | 85.00 | 0.00 | $0 | 0.837% | $93.85 | $11,310 |
| | June | 85.00 | 0.00 | $0 | 0.837% | $94.64 | $11,404 |
| | July | 85.00 | 0.00 | $0 | 0.837% | $95.43 | $11,500 |
| | Aug. | 90.00 | 0.00 | $0 | 0.837% | $96.23 | $11,596 |
| | Sept. | 90.00 | 3.50 | $315 | 0.837% | $97.03 | $12,008 |
| | Oct. | 90.00 | 8.10 | $729 | 0.837% | $100.40 | $12,838 |
| | Nov. | 90.00 | 0.00 | $0 | 0.837% | $107.42 | $12,945 |
| | Dec. | 90.00 | 0.00 | $0 | 0.837% | $108.32 | $13,053 |
| | | | ------ | ------ | ------ | | |
| | | | 11.60 | $1,044 | 10.041% | | |

954

ACCUMULATED PRESENT VALUE OF FEES IN SHAKHAN LITIGATION AS OF 30 NOVEMBER 1987

| Year | Month | | | | | | |
|------|-------|-------|------|------|--------|---------|---------|
| 1980 | Jan. | 90.00 | 0.30 | $27 | 0.959% | $125.16 | $13,206 |
| | Feb. | 100.00 | 0.00 | $0 | 0.959% | $126.62 | $13,332 |
| | March | 100.00 | 0.40 | $40 | 0.959% | $127.83 | $13,500 |
| | Apr. | 100.00 | 0.20 | $20 | 0.959% | $129.44 | $13,649 |
| | May | 100.00 | 0.80 | $80 | 0.959% | $130.88 | $13,860 |
| | June | 100.00 | 0.10 | $10 | 0.959% | $132.90 | $14,003 |
| | July | 115.00 | 0.20 | $23 | 0.959% | $134.27 | $14,160 |
| | Aug. | 115.00 | 0.00 | $0 | 0.959% | $135.70 | $14,296 |
| | Sept. | 115.00 | 0.50 | $58 | 0.959% | $137.08 | $14,491 |
| | Oct. | 115.00 | 1.10 | $127 | 0.959% | $138.94 | $14,756 |
| | Nov. | 115.00 | 0.10 | $12 | 0.959% | $141.49 | $14,909 |
| | Dec. | 115.00 | 0.00 | $0 | 0.959% | $142.95 | $15,052 |
| | | | 3.70 | $396 | 11.506% | | |
| 1981 | Jan. | 115.00 | 0.40 | $46 | 1.169% | $175.97 | $15,274 |
| | Feb. | 115.00 | 0.20 | $23 | 1.169% | $178.57 | $15,476 |
| | March | 115.00 | 1.80 | $207 | 1.169% | $180.92 | $15,864 |
| | Apr. | 115.00 | 3.50 | $403 | 1.169% | $185.46 | $16,452 |
| | May | 115.00 | 0.00 | $0 | 1.169% | $192.33 | $16,644 |
| | June | 125.00 | 0.30 | $38 | 1.169% | $194.58 | $16,876 |
| | July | 125.00 | 1.30 | $163 | 1.169% | $197.30 | $17,236 |
| | Aug. | 125.00 | 0.30 | $38 | 1.169% | $201.50 | $17,475 |
| | Sept. | 125.00 | 0.00 | $0 | 1.169% | $204.30 | $17,679 |
| | Oct. | 125.00 | 0.50 | $63 | 1.169% | $206.60 | $17,948 |
| | Nov. | 125.00 | 0.00 | $0 | 1.169% | $209.03 | $18,158 |
| | Dec. | 125.00 | 3.50 | $438 | 1.169% | $212.20 | $18,000 |
| | | | 11.80 | $1,416 | 14.029% | | |
| 1982 | Jan. | 125.00 | 3.90 | $488 | 0.891% | $167.48 | $19,463 |
| | Feb. | 125.00 | 1.90 | $238 | 0.891% | $173.32 | $19,874 |
| | March | 125.00 | 3.00 | $375 | 0.891% | $176.98 | $20,426 |
| | Apr. | 125.00 | 0.00 | $0 | 0.891% | $181.89 | $20,608 |
| | May | 125.00 | 0.40 | $50 | 0.891% | $183.51 | $20,841 |
| | June | 125.00 | 2.40 | $300 | 0.891% | $185.59 | $21,327 |
| | July | 125.00 | 1.20 | $150 | 0.891% | $189.91 | $21,667 |
| | Aug. | 125.00 | 0.00 | $0 | 0.891% | $192.94 | $21,860 |
| | Sept. | 125.00 | 0.00 | $0 | 0.891% | $194.66 | $22,054 |
| | Oct. | 125.00 | 0.00 | $0 | 0.891% | $196.39 | $22,251 |
| | Nov. | 125.00 | 0.30 | $38 | 0.891% | $198.14 | $22,486 |
| | Dec. | 125.00 | 0.00 | $0 | 0.891% | $200.24 | $22,686 |
| | | | 13.10 | $1,630 | 10.686% | | |
| 1983 | Jan. | 125.00 | 0.00 | $0 | 0.719% | $163.15 | $22,850 |
| | Feb. | 130.00 | 0.00 | $0 | 0.719% | $164.33 | $23,014 |
| | March | 130.00 | 0.40 | $52 | 0.719% | $165.51 | $23,231 |
| | Apr. | 130.00 | 0.50 | $65 | 0.719% | $167.07 | $23,464 |
| | May | 130.00 | 7.40 | $962 | 0.719% | $168.74 | $24,594 |
| | June | 130.00 | 4.10 | $533 | 0.719% | $176.07 | $25,304 |
| | July | 130.00 | 3.60 | $468 | 0.719% | $181.98 | $25,954 |

B-4

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | |
|---|---|---|---|---|---|---|
| | Aug. | 130.00 | 2.40 | $312 | 0.719% | $186.65 | $26,453 |
| | Sept. | 130.00 | 0.20 | $26 | 0.719% | $190.24 | $26,669 |
| | Oct. | 130.00 | 0.40 | $52 | 0.719% | $191.79 | $26,913 |
| | Nov. | 130.00 | 0.50 | $65 | 0.719% | $193.55 | $27,171 |
| | Dec. | 130.00 | 0.80 | $104 | 0.719% | $195.41 | $27,471 |
| | | | 20.30 | $2,639 | 8.630% | | |
| 1984 | Jan. | 130.00 | 0.30 | $39 | 0.798% | $219.31 | $27,729 |
| | Feb. | 140.00 | 0.00 | $0 | 0.798% | $221.37 | $27,950 |
| | March | 140.00 | 5.80 | $812 | 0.798% | $223.14 | $28,986 |
| | Apr. | 140.00 | 4.00 | $560 | 0.798% | $231.40 | $29,777 |
| | May | 140.00 | 0.50 | $70 | 0.798% | $237.72 | $30,605 |
| | June | 140.00 | 2.00 | $280 | 0.798% | $240.18 | $30,605 |
| | July | 140.00 | 2.00 | $280 | 0.798% | $244.33 | $31,129 |
| | Aug. | 140.00 | 0.40 | $56 | 0.798% | $248.52 | $31,434 |
| | Sept. | 140.00 | 0.00 | $0 | 0.798% | $250.95 | $31,685 |
| | Oct. | 140.00 | 19.50 | $2,730 | 0.798% | $252.95 | $34,668 |
| | Nov. | 140.00 | 0.00 | $0 | 0.798% | $276.76 | $34,944 |
| | Dec. | 140.00 | 0.00 | $0 | 0.798% | $278.97 | $35,223 |
| | | | 34.50 | $4,827 | 9.580% | | |
| 1985 | Jan. | 155.00 | 0.00 | $0 | 0.623% | $219.56 | $35,443 |
| | Feb. | 155.00 | 0.00 | $0 | 0.623% | $220.93 | $35,664 |
| | March | 155.00 | 0.00 | $0 | 0.623% | $222.30 | $35,886 |
| | Apr. | 155.00 | 0.00 | $0 | 0.623% | $223.69 | $36,110 |
| | May | 155.00 | 0.00 | $0 | 0.623% | $225.08 | $36,335 |
| | June | 155.00 | 0.00 | $0 | 0.623% | $226.49 | $36,561 |
| | July | 155.00 | 0.00 | $0 | 0.623% | $227.90 | $36,789 |
| | Aug. | 155.00 | 0.00 | $0 | 0.623% | $229.32 | $37,019 |
| | Sept. | 155.00 | 0.00 | $0 | 0.623% | $230.75 | $37,249 |
| | Oct. | 155.00 | 0.00 | $0 | 0.623% | $232.19 | $37,482 |
| | Nov. | 155.00 | 0.00 | $0 | 0.623% | $233.64 | $37,715 |
| | Dec. | 155.00 | 0.00 | $0 | 0.623% | $235.09 | $37,950 |
| | | | 0.00 | $0 | 7.480% | | |
| 1986 | Jan. | | 0.00 | $0 | 0.498% | $189.12 | $38,139 |
| | Feb. | | 0.00 | $0 | 0.498% | $190.06 | $38,330 |
| | March | | 0.00 | $0 | 0.498% | $191.01 | $38,521 |
| | Apr. | | 0.00 | $0 | 0.498% | $191.96 | $38,712 |
| | May | | 0.00 | $0 | 0.498% | $192.92 | $38,905 |
| | June | | 0.00 | $0 | 0.498% | $193.88 | $39,099 |
| | July | | 0.00 | $0 | 0.498% | $194.84 | $39,294 |
| | Aug. | | 0.00 | $0 | 0.498% | $195.82 | $39,490 |
| | Sept. | | 0.00 | $0 | 0.498% | $196.79 | $39,687 |
| | Oct. | | 0.00 | $0 | 0.498% | $197.77 | $39,884 |
| | Nov. | | 0.00 | $0 | 0.498% | $198.76 | $40,083 |
| | Dec. | | 0.00 | $0 | 0.498% | $199.75 | $40,283 |
| | | | 0.00 | $0 | 5.980% | | |
| | Jan. | | 0.00 | $0 | 0.485% | $195.37 | $40,478 |

**ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987**

| | | | | | |
|---|---|---|---|---|---|
| Feb. | 0.00 | $0 | 0.485% | $196.32 | $40,675 | * |
| March | 0.00 | $0 | 0.485% | $197.27 | $40,872 |
| Apr. | 0.00 | $0 | 0.485% | $198.23 | $41,070 |
| May | 0.00 | $0 | 0.485% | $199.19 | $41,269 |
| June | 0.00 | $0 | 0.485% | $200.16 | $41,470 |
| July | 0.00 | $0 | 0.485% | $201.13 | $41,671 |
| Aug. | 0.00 | $0 | 0.485% | $202.10 | $41,873 |
| Sept. | 0.00 | $0 | 0.485% | $203.08 | $42,076 |
| Oct. | 0.00 | $0 | 0.485% | $204.07 | $42,280 |
| Nov. | 0.00 | $0 | 0.485% | $205.06 | $42,485 |
| | ------ | ------- | ----- | | |
| | 0.00 | $0 | 5.820% | | |
| | | | | | |
| | 252.30 | $19,886 | | | $42,485 |
| | ====== | ======= | | | ======= |

* Represents average 3 month T-Bill rate for entire year.

B-6

# APPENDIX C
## ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

ATTORNEY: JOHNSON

| (A) Year | (B) Month | (C) Billing Rate | (D) Monthly Hours | (E) [(C) x (D)] Contemporaneous Payment Amount | (F) Three # Month T-Bill Rate | (G) Previous Month's Accumulated Value x Current Month's T-Bill Rate | (H) Accumulated Present Value |
|---|---|---|---|---|---|---|---|
| 1969 | Aug. | 30.00 | 50.00 | $1,500 | 0.556% | | $1,500 |
| | Sept. | 30.00 | 50.00 | $1,500 | 0.556% | $8.35 | $3,008 |
| | Oct. | 30.00 | 37.25 | $1,118 | 0.556% | $16.74 | $4,143 |
| | Nov. | 30.00 | 117.00 | $3,510 | 0.556% | $23.05 | $7,676 |
| | Dec. | 30.00 | 0.00 | $0 | 0.556% | $42.71 | $7,718 |
| | | | 254.25 | $7,628 | 6.677% | | |
| 1970 | Jan. | 30.00 | 0.25 | $8 | 0.538% | $41.54 | $7,767 |
| | Feb. | 30.00 | 18.50 | $555 | 0.538% | $41.80 | $8,364 |
| | March | 35.00 | 1.50 | $53 | 0.538% | $45.01 | $8,462 |
| | Apr. | 35.00 | 0.00 | $0 | 0.538% | $45.54 | $8,507 |
| | May | 35.00 | 4.50 | $158 | 0.538% | $45.78 | $8,711 |
| | June | 35.00 | 6.50 | $228 | 0.538% | $46.88 | $8,985 |
| | July | 35.00 | 5.00 | $175 | 0.538% | $48.35 | $9,208 |
| | Aug. | 35.00 | 1.25 | $44 | 0.538% | $49.56 | $9,302 |
| | Sept. | 35.00 | 0.00 | $0 | 0.538% | $50.06 | $9,352 |
| | Oct. | 35.00 | 11.00 | $385 | 0.538% | $50.33 | $9,787 |
| | Nov. | 35.00 | 19.75 | $691 | 0.538% | $52.67 | $10,531 |
| | Dec. | 35.00 | 50.00 | $1,750 | 0.538% | $56.67 | $12,338 |
| | | | 118.25 | $4,045 | 6.458% | | |
| 1971 | Jan. | 35.00 | 13.00 | $455 | 0.362% | $44.70 | $12,837 |
| | Feb. | 35.00 | 48.75 | $1,706 | 0.362% | $46.51 | $14,590 |
| | March | 40.00 | 54.75 | $2,190 | 0.362% | $52.86 | $16,833 |
| | Apr. | 40.00 | 6.75 | $270 | 0.362% | $60.99 | $17,164 |
| | May | 40.00 | 14.25 | $570 | 0.362% | $62.19 | $17,796 |
| | June | 40.00 | 35.00 | $1,400 | 0.362% | $64.48 | $19,261 |
| | July | 40.00 | 23.00 | $920 | 0.362% | $69.79 | $20,250 |
| | Aug. | 40.00 | 16.75 | $670 | 0.362% | $73.37 | $20,994 |
| | Sept. | 40.00 | 25.50 | $1,020 | 0.362% | $76.07 | $22,090 |
| | Oct. | 40.00 | 51.50 | $2,060 | 0.362% | $80.04 | $24,230 |
| | Nov. | 40.00 | 17.00 | $680 | 0.362% | $87.79 | $24,998 |
| | Dec. | 40.00 | 1.50 | $60 | 0.362% | $90.57 | $25,148 |
| | | | 307.75 | $12,001 | 4.348% | | |
| 1972 | Jan. | 50.00 | 24.50 | $1,225 | 0.339% | $85.32 | $26,458 |
| | Feb. | 50.00 | 22.75 | $1,138 | 0.339% | $89.76 | $27,686 |
| | March | 50.00 | 12.75 | $638 | 0.339% | $93.92 | $28,417 |
| | Apr. | 50.00 | 33.25 | $1,663 | 0.339% | $96.41 | $30,176 |
| | May | 50.00 | 41.00 | $2,050 | 0.339% | $102.37 | $32,328 |
| | June | 50.00 | 23.25 | $1,163 | 0.339% | $109.67 | $33,601 |
| | July | 50.00 | 21.00 | $1,050 | 0.339% | $113.99 | $34,765 |
| | Aug. | 50.00 | 76.75 | $3,838 | 0.339% | $117.94 | $38,720 |
| | Sept. | 50.00 | 20.75 | $1,038 | 0.339% | $131.36 | $39,889 |

C-1

*ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Oct. | 50.00 | 29.50 | $1,475 | 0.339% | $135.32 | $41,499 |
| | Nov. | 50.00 | 26.50 | $1,325 | 0.339% | $140.79 | $42,965 |
| | Dec. | 50.00 | 6.75 | $338 | 0.339% | $145.76 | $43,448 |
| | | | 330.75 | $16,938 | 4.071% | | |
| 1973 | Jan. | 50.00 | 12.75 | $638 | 0.587% | $254.93 | $44,341 |
| | Feb. | 50.00 | 21.75 | $1,088 | 0.587% | $260.17 | $45,688 |
| | March | 50.00 | 21.75 | $1,088 | 0.587% | $268.08 | $47,044 |
| | Apr. | 50.00 | 18.00 | $900 | 0.587% | $276.03 | $48,220 |
| | May | 50.00 | 1.25 | $63 | 0.587% | $282.93 | $48,565 |
| | June | 50.00 | 0.00 | $0 | 0.587% | $284.96 | $48,850 |
| | July | 50.00 | 1.50 | $75 | 0.587% | $286.63 | $49,212 |
| | Aug. | 50.00 | 9.75 | $488 | 0.587% | $288.75 | $49,900 |
| | Sept. | 50.00 | 0.00 | $0 | 0.587% | $293.31 | $50,282 |
| | Oct. | 50.00 | 17.50 | $875 | 0.587% | $295.03 | $51,452 |
| | Nov. | 50.00 | 2.25 | $113 | 0.587% | $301.89 | $51,866 |
| | Dec. | 50.00 | 15.00 | $750 | 0.587% | $304.32 | $52,920 |
| | | | 121.50 | $6,075 | 7.041% | | |
| 1974 | Jan. | 50.00 | 12.25 | $613 | 0.657% | $347.77 | $53,881 |
| | Feb. | 50.00 | 28.25 | $1,413 | 0.657% | $354.09 | $55,647 |
| | March | 50.00 | 0.00 | $0 | 0.657% | $365.69 | $56,013 |
| | Apr. | 55.00 | 4.75 | $261 | 0.657% | $368.10 | $56,642 |
| | May | 55.00 | 3.00 | $165 | 0.657% | $372.23 | $57,179 |
| | June | 60.00 | 7.00 | $420 | 0.657% | $375.76 | $57,975 |
| | July | 60.00 | 17.75 | $1,065 | 0.657% | $380.99 | $59,421 |
| | Aug. | 60.00 | 8.25 | $495 | 0.657% | $390.50 | $60,307 |
| | Sept. | 60.00 | 23.25 | $1,395 | 0.657% | $396.32 | $62,098 |
| | Oct. | 60.00 | 29.25 | $1,755 | 0.657% | $408.09 | $64,261 |
| | Nov. | 60.00 | 5.50 | $330 | 0.657% | $422.30 | $65,013 |
| | Dec. | 60.00 | 27.75 | $1,665 | 0.657% | $427.25 | $67,106 |
| | | | 167.00 | $9,576 | 7.886% | | |
| 1975 | Jan. | 60.00 | 52.00 | $3,120 | 0.487% | $326.47 | $70,552 |
| | Feb. | 68.00 | 11.00 | $748 | 0.487% | $343.24 | $71,643 |
| | March | 68.00 | 23.00 | $1,564 | 0.487% | $348.54 | $73,556 |
| | Apr. | 68.00 | 14.00 | $952 | 0.487% | $357.05 | $74,866 |
| | May | 68.00 | 10.75 | $731 | 0.487% | $364.22 | $75,961 |
| | June | 68.00 | 6.50 | $442 | 0.487% | $369.55 | $76,773 |
| | July | 68.00 | 5.50 | $374 | 0.487% | $373.50 | $77,520 |
| | Aug. | 68.00 | 0.50 | $34 | 0.487% | $377.13 | $77,931 |
| | Sept. | 68.00 | 39.75 | $2,703 | 0.487% | $379.13 | $81,013 |
| | Oct. | 68.00 | 52.00 | $3,536 | 0.487% | $394.13 | $84,943 |
| | Nov. | 68.00 | 6.00 | $408 | 0.487% | $413.25 | $85,765 |
| | Dec. | 68.00 | 0.00 | $0 | 0.487% | $417.25 | $86,182 |
| | | | 221.00 | $14,612 | 5.838% | | |
| 1976 | Jan. | 72.00 | 2.00 | $144 | 0.416% | $358.30 | $86,684 |
| | Feb. | 72.00 | 4.75 | $342 | 0.416% | $360.39 | $87,387 |
| | March | 72.00 | 6.00 | $432 | 0.416% | $363.31 | $88,182 |

**ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987**

| | | | | | | |
|---|---|---|---|---|---|---|
| | Apr. | 72.00 | 5.50 | $396 | 0.416% | $366.62 | $88,945 |
| | May | 72.00 | 1.25 | $90 | 0.416% | $369.79 | $89,404 |
| | June | 72.00 | 9.00 | $648 | 0.416% | $371.70 | $90,424 |
| | July | 72.00 | 5.50 | $396 | 0.416% | $375.94 | $91,196 |
| | Aug. | 72.00 | 16.00 | $1,152 | 0.416% | $379.15 | $92,727 |
| | Sept. | 72.00 | 5.00 | $360 | 0.416% | $385.51 | $93,473 |
| | Oct. | 72.00 | 2.00 | $144 | 0.416% | $388.61 | $94,005 |
| | Nov. | 72.00 | 4.00 | $288 | 0.416% | $390.83 | $94,604 |
| | Dec. | 72.00 | 9.75 | $702 | 0.416% | $393.65 | $95,780 |
| | | | 70.75 | $5,094 | 4.989% | | |
| 1977 | Jan. | 80.00 | 9.25 | $740 | 0.439% | $420.23 | $96,940 |
| | Feb. | 80.00 | 10.00 | $800 | 0.439% | $425.32 | $98,165 |
| | March | 80.00 | 5.25 | $420 | 0.439% | $430.70 | $99,016 |
| | Apr. | 80.00 | 8.00 | $640 | 0.439% | $434.43 | $100,090 |
| | May | 80.00 | 12.75 | $1,020 | 0.439% | $439.15 | $101,550 |
| | June | 80.00 | 4.50 | $360 | 0.439% | $445.55 | $102,355 |
| | July | 80.00 | 44.25 | $3,540 | 0.439% | $449.00 | $106,344 |
| | Aug. | 80.00 | 63.75 | $5,100 | 0.439% | $466.50 | $111,911 |
| | Sept. | 80.00 | 3.00 | $240 | 0.439% | $491.01 | $112,642 |
| | Oct. | 80.00 | 8.00 | $640 | 0.439% | $494.22 | $113,776 |
| | Nov. | 80.00 | 14.00 | $1,120 | 0.439% | $499.19 | $115,395 |
| | Dec. | 80.00 | 0.75 | $60 | 0.439% | $506.30 | $115,961 |
| | | | 183.50 | $14,680 | 5.265% | | |
| 1978 | Jan. | 85.00 | 12.25 | $1,041 | 0.602% | $697.80 | $117,700 |
| | Feb. | 85.00 | 44.00 | $3,740 | 0.602% | $708.26 | $122,149 |
| | March | 85.00 | 34.75 | $2,954 | 0.602% | $735.03 | $125,838 |
| | Apr. | 85.00 | 1.25 | $106 | 0.602% | $757.23 | $126,701 |
| | May | 85.00 | 5.00 | $425 | 0.602% | $762.42 | $127,880 |
| | June | 85.00 | 3.00 | $255 | 0.602% | $769.57 | $128,913 |
| | July | 85.00 | 25.75 | $2,189 | 0.602% | $775.73 | $131,877 |
| | Aug. | 85.00 | 1.25 | $106 | 0.602% | $793.57 | $132,777 |
| | Sept. | 85.00 | 0.00 | $0 | 0.602% | $798.99 | $133,576 |
| | Oct. | 85.00 | 0.00 | $0 | 0.602% | $803.80 | $134,380 |
| | Nov. | 85.00 | 0.00 | $0 | 0.602% | $808.63 | $135,189 |
| | Dec. | 85.00 | 1.25 | $106 | 0.602% | $813.50 | $136,108 |
| | | | 128.50 | $10,923 | 7.221% | | |
| 1979 | Jan. | 92.00 | 1.25 | $115 | 0.037% | $1,138.89 | $137,362 |
| | Feb. | 92.00 | 0.25 | $23 | 0.037% | $1,149.30 | $138,535 |
| | March | 92.00 | 0.75 | $69 | 0.037% | $1,159.19 | $139,763 |
| | Apr. | 92.00 | 0.25 | $23 | 0.037% | $1,169.47 | $140,955 |
| | May | 92.00 | 0.75 | $69 | 0.037% | $1,179.44 | $142,204 |
| | June | 92.00 | 0.00 | $0 | 0.037% | $1,189.80 | $143,394 |
| | July | 92.00 | 0.00 | $0 | 0.037% | $1,199.85 | $144,594 |
| | Aug. | 92.00 | 5.50 | $506 | 0.037% | $1,209.89 | $146,309 |
| | Sept. | 92.00 | 8.50 | $782 | 0.037% | $1,224.24 | $148,316 |
| | Oct. | 99.00 | 5.25 | $520 | 0.037% | $1,241.03 | $150,076 |
| | Nov. | 99.00 | 4.75 | $470 | 0.037% | $1,255.77 | $151,803 |
| | Dec. | 99.00 | 0.00 | $0 | 0.037% | $1,270.21 | $153,073 |
| | | | 27.25 | $2,577 | 10.041% | | |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| Year | Month | | | | | | |
|------|-------|--------|--------|---------|---------|-----------|----------|
| 1980 | Jan. | 99.00 | 0.50 | $50 | 0.959% | $1,467.71 | $154,590 |
| | Feb. | 99.00 | 4.75 | $470 | 0.959% | $1,482.26 | $156,542 |
| | March | 106.00 | 0.00 | $0 | 0.959% | $1,500.90 | $158,043 |
| | Apr. | 106.00 | 0.00 | $0 | 0.959% | $1,515.37 | $159,559 |
| | May | 106.00 | 0.25 | $27 | 0.959% | $1,529.90 | $161,115 |
| | June | 106.00 | 0.75 | $80 | 0.959% | $1,544.83 | $162,740 |
| | July | 106.00 | 0.75 | $80 | 0.959% | $1,560.40 | $164,379 |
| | Aug. | 106.00 | 1.50 | $159 | 0.959% | $1,576.12 | $166,115 |
| | Sept. | 106.00 | 10.75 | $1,140 | 0.959% | $1,592.76 | $168,847 |
| | Oct. | 106.00 | 16.25 | $1,723 | 0.959% | $1,610.96 | $172,188 |
| | Nov. | 106.00 | 5.00 | $530 | 0.959% | $1,651.00 | $174,369 |
| | Dec. | 106.00 | 0.00 | $0 | 0.959% | $1,671.91 | $176,041 |
| | | | 40.50 | $4,256 | 11.506% | | |
| | | | | | | | |
| 1981 | Jan. | 125.00 | 2.75 | $344 | 1.169% | $2,050.07 | $178,443 |
| | Feb. | 125.00 | 0.00 | $0 | 1.169% | $2,086.15 | $180,529 |
| | March | 125.00 | 17.50 | $2,188 | 1.169% | $2,110.54 | $184,827 |
| | Apr. | 125.00 | 3.50 | $438 | 1.169% | $2,160.70 | $187,425 |
| | May | 125.00 | 0.00 | $0 | 1.169% | $2,191.16 | $189,617 |
| | June | 125.00 | 1.25 | $156 | 1.169% | $2,216.70 | $191,990 |
| | July | 125.00 | 0.75 | $94 | 1.169% | $2,244.52 | $194,328 |
| | Aug. | 125.00 | 0.50 | $63 | 1.169% | $2,271.86 | $196,662 |
| | Sept. | 125.00 | 0.00 | $0 | 1.169% | $2,299.15 | $198,961 |
| | Oct. | 125.00 | 0.00 | $0 | 1.169% | $2,326.02 | $201,287 |
| | Nov. | 125.00 | 10.50 | $1,313 | 1.169% | $2,353.22 | $204,953 |
| | Dec. | 125.00 | 1.50 | $188 | 1.169% | $2,396.07 | $207,537 |
| | | | 38.25 | $4,781 | 14.029% | | |
| | | | | | | | |
| 1982 | Jan. | 135.00 | 3.50 | $473 | 0.891% | $1,848.11 | $209,857 |
| | Feb. | 135.00 | 10.00 | $1,350 | 0.891% | $1,868.78 | $213,076 |
| | March | 135.00 | 35.75 | $4,826 | 0.891% | $1,897.44 | $219,880 |
| | Apr. | 135.00 | 33.25 | $4,489 | 0.891% | $1,957.32 | $226,246 |
| | May | 135.00 | 20.75 | $2,801 | 0.891% | $2,014.72 | $231,062 |
| | June | 135.00 | 58.75 | $7,931 | 0.891% | $2,057.61 | $241,051 |
| | July | 135.00 | 58.50 | $7,898 | 0.891% | $2,146.56 | $251,095 |
| | Aug. | 135.00 | 8.50 | $1,148 | 0.891% | $2,236.00 | $254,478 |
| | Sept. | 135.00 | 0.50 | $68 | 0.891% | $2,266.13 | $256,812 |
| | Oct. | 135.00 | 0.00 | $0 | 0.891% | $2,286.91 | $259,099 |
| | Nov. | 135.00 | 4.75 | $641 | 0.891% | $2,307.27 | $262,047 |
| | Dec. | 135.00 | 7.75 | $1,046 | 0.891% | $2,333.53 | $265,427 |
| | | | 242.00 | $32,670 | 10.686% | | |
| | | | | | | | |
| 1983 | Jan. | 145.00 | 32.00 | $4,640 | 0.719% | $1,908.86 | $271,976 |
| | Feb. | 145.00 | 49.25 | $7,141 | 0.719% | $1,955.96 | $281,873 |
| | March | 145.00 | 16.75 | $2,429 | 0.719% | $2,021.30 | $285,523 |
| | Apr. | 145.00 | 14.25 | $2,066 | 0.719% | $2,053.39 | $289,643 |
| | May | 145.00 | 119.75 | $17,364 | 0.719% | $2,083.02 | $309,090 |
| | June | 145.00 | 104.00 | $15,080 | 0.719% | $2,222.87 | $326,393 |
| | July | 145.00 | 14.50 | $2,103 | 0.719% | $2,347.31 | $330,842 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|------|-------|--------|--------|---------|----------|------------|-----------|
| | Aug. | 145.00 | 0.00 | $0 | 0.719% | $2,379.31 | $333,222 |
| | Sept. | 145.00 | 5.25 | $761 | 0.719% | $2,396.42 | $336,379 |
| | Oct. | 145.00 | 9.75 | $1,414 | 0.719% | $2,419.13 | $340,212 |
| | Nov. | 145.00 | 15.50 | $2,240 | 0.719% | $2,446.69 | $344,986 |
| | Dec. | 145.00 | 17.50 | $2,538 | 0.719% | $2,480.45 | $349,924 |
| | | | ------ | ------- | ------ | | |
| | | | 398.50 | $57,783 | 8.630% | | |
| | | | | | | | |
| 1984 | Jan. | 160.00 | 31.50 | $5,040 | 0.798% | $2,793.56 | $357,758 |
| | Feb. | 160.00 | 2.75 | $440 | 0.798% | $2,856.10 | $361,054 |
| | March | 160.00 | 18.00 | $2,880 | 0.798% | $2,882.42 | $366,816 |
| | Apr. | 160.00 | 32.25 | $5,160 | 0.798% | $2,928.42 | $374,905 |
| | May | 160.00 | 23.25 | $3,720 | 0.798% | $2,992.99 | $381,618 |
| | June | 160.00 | 22.75 | $3,640 | 0.798% | $3,046.58 | $388,304 |
| | July | 160.00 | 15.00 | $2,400 | 0.798% | $3,099.96 | $393,804 |
| | Aug. | 160.00 | 1.50 | $240 | 0.798% | $3,143.87 | $397,188 |
| | Sept. | 160.00 | 9.50 | $1,520 | 0.798% | $3,170.89 | $401,879 |
| | Oct. | 160.00 | 10.00 | $1,600 | 0.798% | $3,208.34 | $406,688 |
| | Nov. | 160.00 | 0.00 | $0 | 0.798% | $3,246.72 | $409,934 |
| | Dec. | 160.00 | 0.00 | $0 | 0.798% | $3,272.64 | $413,207 |
| | | | ------ | ------- | ------ | | |
| | | | 166.50 | $26,640 | 9.580% | | |
| | | | | | | | |
| 1985 | Jan. | 165.00 | 0.00 | $0 | 0.623% | $2,575.66 | $415,783 |
| | Feb. | 165.00 | 0.00 | $0 | 0.623% | $2,591.71 | $418,374 |
| | March | 165.00 | 0.00 | $0 | 0.623% | $2,607.87 | $420,982 |
| | Apr. | 165.00 | 0.00 | $0 | 0.623% | $2,624.12 | $423,606 |
| | May | 165.00 | 0.00 | $0 | 0.623% | $2,640.48 | $426,247 |
| | June | 165.00 | 0.00 | $0 | 0.623% | $2,656.94 | $428,904 |
| | July | 165.00 | 0.00 | $0 | 0.623% | $2,673.50 | $431,577 |
| | Aug. | 165.00 | 0.00 | $0 | 0.623% | $2,690.16 | $434,267 |
| | Sept. | 165.00 | 0.00 | $0 | 0.623% | $2,706.93 | $436,974 |
| | Oct. | 165.00 | 0.00 | $0 | 0.623% | $2,723.81 | $439,698 |
| | Nov. | 165.00 | 0.00 | $0 | 0.623% | $2,740.78 | $442,439 |
| | Dec. | 165.00 | 0.00 | $0 | 0.623% | $2,757.87 | $445,197 |
| | | | ------ | ------- | ------ | | |
| | | | 0.00 | $0 | 7.480% | | |
| | | | | | | | |
| 1986 | Jan. | | 0.00 | $0 | 0.498% | $2,210.56 | $447,415 |
| | Feb. | | 0.00 | $0 | 0.498% | $2,229.62 | $449,645 |
| | March | | 0.00 | $0 | 0.498% | $2,240.73 | $451,886 |
| | Apr. | | 0.00 | $0 | 0.498% | $2,251.90 | $454,138 |
| | May | | 0.00 | $0 | 0.498% | $2,263.12 | $456,401 |
| | June | | 0.00 | $0 | 0.498% | $2,274.40 | $458,675 |
| | July | | 0.00 | $0 | 0.498% | $2,285.73 | $460,961 |
| | Aug. | | 0.00 | $0 | 0.498% | $2,297.12 | $463,258 |
| | Sept. | | 0.00 | $0 | 0.498% | $2,308.57 | $465,566 |
| | Oct. | | 0.00 | $0 | 0.498% | $2,320.07 | $467,887 |
| | Nov. | | 0.00 | $0 | 0.498% | $2,331.63 | $470,218 |
| | Dec. | | 0.00 | $0 | 0.498% | $2,343.25 | $472,561 |
| | | | ------ | ------- | ------ | | |
| | | | 0.00 | $0 | 5.980% | | |
| | | | | | | | |
| 1987 | Jan. | | 0.00 | $0 | 0.485% | $2,291.92 | $474,853 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | |
|---|---|---|---|---|---|
| Feb. | 0.00 | $0 | 0.485% | $2,303.04 | $477,156 |
| March | 0.00 | $0 | 0.485% | $2,314.21 | $479,471 |
| Apr. | 0.00 | $0 | 0.485% | $2,325.43 | $481,796 |
| May | 0.00 | $0 | 0.485% | $2,336.71 | $484,133 |
| June | 0.00 | $0 | 0.485% | $2,348.04 | $486,481 |
| July | 0.00 | $0 | 0.485% | $2,359.43 | $488,840 |
| Aug. | 0.00 | $0 | 0.485% | $2,370.88 | $491,211 |
| Sept. | 0.00 | $0 | 0.485% | $2,382.37 | $493,593 |
| Oct. | 0.00 | $0 | 0.485% | $2,393.93 | $495,987 |
| Nov. | 0.00 | $0 | 0.485% | $2,405.54 | $498,393 |
| | ------ | ------- | ------ | | |
| | 0.00 | $0 | 5.820% | | |

| | | |
|---|---|---|
| 2,824.25 | $230,278 | $498,393 |
| ======== | ======== | ======== |

Represents average 3 month T-Bill rate for entire year.

C-6

# APPENDIX D

## ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

ATTORNEY: FROSS

| (A) Year | (B) Month | (C) Billing Rate | (D) Monthly Hours | (E) [(C) x (D)] Contemporaneous Payment Amount | (F) Three # Month T-Bill Rate | (G) Previous Month's Accumulated Value x Current Month's T-Bill Rate | (H) Accumulated Present Value |
|------|-------|------|------|------|------|------|------|
| 1969 | Aug. | | | | 0.556% | | |
| | Sept. | | | | 0.556% | | |
| | Oct. | 33.00 | 52.10 | $1,719 | 0.556% | $0.00 | $1,719 |
| | Nov. | 33.00 | 30.00 | $990 | 0.556% | $9.56 | $2,719 |
| | Dec. | 33.00 | 9.50 | $314 | 0.556% | $15.13 | $3,047 |
| | | | ------ | ------ | ------ | ------ | |
| | | | 91.60 | $3,023 | 6.677% | $24.69 | |
| 1970 | Jan. | 33.00 | 7.70 | $254 | 0.538% | $16.40 | $3,318 |
| | Feb. | 33.00 | 10.00 | $330 | 0.538% | $17.85 | $3,666 |
| | March | 33.00 | 0.00 | $0 | 0.538% | $19.73 | $3,685 |
| | Apr. | 33.00 | 0.00 | $0 | 0.538% | $19.83 | $3,705 |
| | May | 33.00 | 1.00 | $33 | 0.538% | $19.94 | $3,758 |
| | June | 35.00 | 1.00 | $35 | 0.538% | $20.22 | $3,813 |
| | July | 35.00 | 0.00 | $0 | 0.538% | $20.52 | $3,834 |
| | Aug. | 35.00 | 0.00 | $0 | 0.538% | $20.63 | $3,854 |
| | Sept. | 35.00 | 0.00 | $0 | 0.538% | $20.74 | $3,875 |
| | Oct. | 35.00 | 6.80 | $238 | 0.538% | $20.85 | $4,134 |
| | Nov. | 35.00 | 4.30 | $151 | 0.538% | $22.25 | $4,307 |
| | Dec. | 35.00 | 11.20 | $392 | 0.538% | $23.18 | $4,722 |
| | | | ------ | ------ | ------ | | |
| | | | 42.00 | $1,433 | 6.458% | | |
| 1971 | Jan. | 35.00 | 5.30 | $186 | 0.362% | $17.11 | $4,925 |
| | Feb. | 35.00 | 30.70 | $1,075 | 0.362% | $17.84 | $6,017 |
| | March | 35.00 | 25.50 | $893 | 0.362% | $21.80 | $6,931 |
| | Apr. | 35.00 | 1.50 | $53 | 0.362% | $25.11 | $7,009 |
| | May | 35.00 | 3.00 | $105 | 0.362% | $25.40 | $7,139 |
| | June | 35.00 | 8.80 | $308 | 0.362% | $25.87 | $7,473 |
| | July | 38.00 | 1.90 | $72 | 0.362% | $27.08 | $7,572 |
| | Aug. | 38.00 | 0.00 | $0 | 0.362% | $27.44 | $7,600 |
| | Sept. | 38.00 | 0.00 | $0 | 0.362% | $27.54 | $7,627 |
| | Oct. | 38.00 | 18.90 | $718 | 0.362% | $27.64 | $8,373 |
| | Nov. | 38.00 | 7.50 | $285 | 0.362% | $30.34 | $8,689 |
| | Dec. | 38.00 | 0.00 | $0 | 0.362% | $31.48 | $8,720 |
| | | | ------ | ------ | ------ | | |
| | | | 103.10 | $3,693 | 4.348% | | |
| 1972 | Jan. | 38.00 | 7.80 | $296 | 0.339% | $29.58 | $9,046 |
| | Feb. | 38.00 | 14.10 | $536 | 0.339% | $30.69 | $9,612 |
| | March | 38.00 | 2.00 | $76 | 0.339% | $32.61 | $9,721 |
| | Apr. | 38.00 | 3.10 | $118 | 0.339% | $32.98 | $9,872 |
| | May | 38.00 | 0.00 | $0 | 0.339% | $33.49 | $9,905 |
| | June | 38.00 | 1.50 | $57 | 0.339% | $33.60 | $9,996 |
| | July | 38.00 | 0.00 | $0 | 0.339% | $33.91 | $10,030 |
| | Aug. | 38.00 | 0.00 | $0 | 0.339% | $34.03 | $10,064 |
| | Sept. | 41.00 | 9.20 | $377 | 0.339% | $34.14 | $10,475 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Oct. | 41.00 | 22.20 | $910 | 0.339% | $35.54 | $11,421 |
| | Nov. | 41.00 | 3.00 | $123 | 0.339% | $38.75 | $11,583 |
| | Dec. | 41.00 | 1.30 | $53 | 0.339% | $39.29 | $11,675 |
| | | | ------ | ------ | ------- | | |
| | | | 64.20 | $2,547 | 4.071% | | |
| 1973 | Jan. | 43.00 | 2.60 | $112 | 0.587% | $68.50 | $11,856 |
| | Feb. | 43.00 | 3.40 | $146 | 0.587% | $69.56 | $12,071 |
| | March | 43.00 | 8.50 | $366 | 0.587% | $70.03 | $12,508 |
| | Apr. | 43.00 | 10.10 | $434 | 0.587% | $73.39 | $13,015 |
| | May | 43.00 | 3.30 | $142 | 0.587% | $76.37 | $13,234 |
| | June | 43.00 | 0.00 | $0 | 0.587% | $77.65 | $13,311 |
| | July | 46.00 | 1.30 | $60 | 0.587% | $78.10 | $13,449 |
| | Aug. | 465.00 | 0.00 | $0 | 0.587% | $78.91 | $13,528 |
| | Sept. | 46.00 | 0.00 | $0 | 0.587% | $79.38 | $13,607 |
| | Oct. | 46.00 | 3.60 | $166 | 0.587% | $79.84 | $13,853 |
| | Nov. | 46.00 | 5.90 | $271 | 0.587% | $81.28 | $14,206 |
| | Dec. | 46.00 | 0.00 | $0 | 0.587% | $83.35 | $14,289 |
| | | | ------ | ------ | ------- | | |
| | | | 38.70 | $1,697 | 7.041% | | |
| 1974 | Jan. | 46.00 | 4.50 | $207 | 0.657% | $93.90 | $14,590 |
| | Feb. | 46.00 | 0.80 | $37 | 0.657% | $95.88 | $14,723 |
| | March | 46.00 | 0.00 | $0 | 0.657% | $96.75 | $14,819 |
| | Apr. | 46.00 | 9.50 | $437 | 0.657% | $97.39 | $15,354 |
| | May | 46.00 | 0.00 | $0 | 0.657% | $100.90 | $15,455 |
| | June | 46.00 | 1.20 | $55 | 0.657% | $101.56 | $15,611 |
| | July | 50.00 | 4.20 | $210 | 0.657% | $102.59 | $15,924 |
| | Aug. | 50.00 | 0.00 | $0 | 0.657% | $104.65 | $16,029 |
| | Sept. | 50.00 | 1.80 | $90 | 0.657% | $105.33 | $16,224 |
| | Oct. | 50.00 | 12.60 | $630 | 0.657% | $106.62 | $16,961 |
| | Nov. | 50.00 | 3.80 | $190 | 0.657% | $111.46 | $17,262 |
| | Dec. | 50.00 | 0.00 | $0 | 0.657% | $113.44 | $17,375 |
| | | | ------ | ------ | ------ | | |
| | | | 38.40 | $1,856 | 7.886% | | |
| 1975 | Jan. | 60.00 | 4.20 | $252 | 0.487% | $84.53 | $17,712 |
| | Feb. | 60.00 | 0.00 | $0 | 0.487% | $86.17 | $17,798 |
| | March | 66.00 | 1.00 | $66 | 0.487% | $86.59 | $17,951 |
| | Apr. | 66.00 | 11.60 | $766 | 0.487% | $87.33 | $18,804 |
| | May | 66.00 | 7.10 | $469 | 0.487% | $91.48 | $19,364 |
| | June | 66.00 | 2.60 | $172 | 0.487% | $94.20 | $19,630 |
| | July | 66.00 | 1.60 | $106 | 0.487% | $95.50 | $19,831 |
| | Aug. | 66.00 | 1.20 | $79 | 0.487% | $96.48 | $20,006 |
| | Sept. | 66.00 | 1.50 | $99 | 0.487% | $97.33 | $20,203 |
| | Oct. | 66.00 | 15.30 | $1,010 | 0.487% | $98.29 | $21,311 |
| | Nov. | 66.00 | 0.00 | $0 | 0.487% | $103.68 | $21,414 |
| | Dec. | 66.00 | 4.90 | $323 | 0.487% | $104.18 | $21,842 |
| | | | ------ | ------ | ------- | | |
| | | | 51.00 | $3,341 | 5.838% | | |
| 1976 | Jan. | 66.00 | 0.80 | $53 | 0.416% | $90.81 | $21,986 |
| | Feb. | 66.00 | 0.00 | $0 | 0.416% | $91.41 | $22,077 |
| | March | 66.00 | 3.10 | $205 | 0.416% | $91.79 | $22,373 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | |
|---|---|---|---|---|---|---|
| | Apr. | 66.00 | 0.00 | $0 | 0.416% | $93.02 | $22,466 |
| | May | 66.00 | 0.00 | $0 | 0.416% | $93.40 | $22,560 |
| | June | 66.00 | 0.00 | $0 | 0.416% | $93.79 | $22,654 |
| | July | 70.00 | 0.00 | $0 | 0.416% | $94.18 | $22,748 |
| | Aug. | 70.00 | 3.00 | $210 | 0.416% | $94.57 | $23,052 |
| | Sept. | 70.00 | 0.60 | $42 | 0.416% | $95.04 | $23,190 |
| | Oct. | 70.00 | 0.00 | $0 | 0.416% | $96.41 | $23,287 |
| | Nov. | 70.00 | 0.00 | $0 | 0.416% | $96.81 | $23,383 |
| | Dec. | 70.00 | 1.20 | $84 | 0.416% | $97.22 | $23,565 |
| | | | 8.70 | $593 | 4.989% | | |
| 1977 | Jan. | 70.00 | 0.00 | $0 | 0.439% | $103.39 | $23,668 |
| | Feb. | 70.00 | 0.00 | $0 | 0.439% | $103.84 | $23,772 |
| | March | 70.00 | 0.00 | $0 | 0.439% | $104.30 | $23,876 |
| | Apr. | 70.00 | 2.10 | $147 | 0.439% | $104.76 | $24,128 |
| | May | 70.00 | 1.60 | $112 | 0.439% | $105.86 | $24,346 |
| | June | 70.00 | 3.00 | $210 | 0.439% | $106.82 | $24,663 |
| | July | 70.00 | 0.00 | $0 | 0.439% | $108.21 | $24,771 |
| | Aug. | 70.00 | 0.60 | $42 | 0.439% | $108.68 | $24,922 |
| | Sept. | 70.00 | 4.70 | $329 | 0.439% | $109.34 | $25,360 |
| | Oct. | 70.00 | 0.00 | $0 | 0.439% | $111.27 | $25,471 |
| | Nov. | 70.00 | 8.80 | $616 | 0.439% | $111.75 | $26,199 |
| | Dec. | 70.00 | 1.90 | $133 | 0.439% | $114.95 | $26,447 |
| | | | 22.70 | $1,589 | 5.265% | | |
| 1978 | Jan. | 70.00 | 11.60 | $812 | 0.602% | $159.14 | $27,418 |
| | Feb. | 70.00 | 6.20 | $434 | 0.602% | $164.99 | $28,017 |
| | March | 70.00 | 0.00 | $0 | 0.602% | $168.59 | $28,186 |
| | Apr. | 70.00 | 2.70 | $189 | 0.602% | $169.61 | $28,544 |
| | May | 70.00 | 0.00 | $0 | 0.602% | $171.76 | $28,716 |
| | June | 70.00 | 0.00 | $0 | 0.602% | $172.88 | $28,889 |
| | July | 70.00 | 0.00 | $0 | 0.602% | $173.84 | $29,063 |
| | Aug. | 70.00 | 0.00 | $0 | 0.602% | $174.80 | $29,237 |
| | Sept. | 70.00 | 0.00 | $0 | 0.602% | $175.94 | $29,413 |
| | Oct. | 70.00 | 0.00 | $0 | 0.602% | $176.99 | $29,590 |
| | Nov. | 70.00 | 0.00 | $0 | 0.602% | $178.06 | $29,768 |
| | Dec. | 70.00 | 0.00 | $0 | 0.602% | $179.13 | $29,948 |
| | | | 20.50 | $1,435 | 7.221% | | |
| 1979 | Jan. | 88.00 | 0.00 | $0 | 0.837% | $250.59 | $30,198 |
| | Feb. | 88.00 | 0.00 | $0 | 0.837% | $252.68 | $30,451 |
| | March | 88.00 | 3.60 | $317 | 0.837% | $254.80 | $31,022 |
| | Apr. | 88.00 | 0.00 | $0 | 0.837% | $259.58 | $31,282 |
| | May | 88.00 | 0.00 | $0 | 0.837% | $261.75 | $31,544 |
| | June | 88.00 | 0.00 | $0 | 0.837% | $263.94 | $31,808 |
| | July | 84.00 | 1.60 | $134 | 0.837% | $266.15 | $32,208 |
| | Aug. | 94.00 | 2.90 | $273 | 0.837% | $269.58 | $32,750 |
| | Sept. | 94.00 | 2.80 | $263 | 0.837% | $274.04 | $33,280 |
| | Oct. | 94.00 | 29.10 | $2,735 | 0.837% | $278.53 | $36,302 |
| | Nov. | 94.00 | 5.60 | $526 | 0.837% | $303.75 | $37,132 |
| | Dec. | 94.00 | 0.00 | $0 | 0.837% | $310.70 | $37,442 |
| | | | 45.60 | $4,249 | 10.041% | | |

D-3

ACCUMULATED PRESENT VALUE OF FEES IN SHAKHAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1980 | Jan. | 100.00 | 15.80 | $1,580 | 0.959% | $359.01 | $39,381 |
| | Feb. | 100.00 | 18.30 | $1,830 | 0.959% | $377.60 | $41,589 |
| | March | 100.00 | 15.20 | $1,520 | 0.959% | $398.77 | $43,508 |
| | Apr. | 100.00 | 20.40 | $2,040 | 0.959% | $417.17 | $45,965 |
| | May | 100.00 | 9.30 | $930 | 0.959% | $440.73 | $47,336 |
| | June | 100.00 | 11.10 | $1,110 | 0.959% | $453.87 | $48,900 |
| | July | 100.00 | 10.40 | $1,040 | 0.959% | $468.86 | $50,408 |
| | Aug. | 100.00 | 3.90 | $390 | 0.959% | $483.33 | $51,282 |
| | Sept. | 100.00 | 27.50 | $2,750 | 0.959% | $491.71 | $54,523 |
| | Oct. | 100.00 | 16.30 | $1,630 | 0.959% | $522.79 | $56,676 |
| | Nov. | 100.00 | 20.00 | $2,000 | 0.959% | $543.43 | $59,220 |
| | Dec. | 100.00 | 5.30 | $530 | 0.959% | $567.82 | $60,317 |
| | | | ------ | ------ | | ------ | |
| | | | 173.50 | $17,350 | 11.506% | | |
| | | | | | | | |
| 1981 | Jan. | 113.00 | 20.10 | $2,271 | 1.169% | $705.16 | $63,294 |
| | Feb. | 113.00 | 0.00 | $0 | 1.169% | $739.96 | $64,034 |
| | March | 113.00 | 12.90 | $1,458 | 1.169% | $748.61 | $66,240 |
| | Apr. | 113.00 | 7.60 | $859 | 1.169% | $774.40 | $67,873 |
| | May | 113.00 | 2.30 | $260 | 1.169% | $793.50 | $68,927 |
| | June | 113.00 | 5.80 | $655 | 1.169% | $805.81 | $70,388 |
| | July | 113.00 | 4.80 | $542 | 1.169% | $822.89 | $71,753 |
| | Aug. | 113.00 | 5.00 | $565 | 1.169% | $838.86 | $73,157 |
| | Sept. | 113.00 | 11.30 | $1,277 | 1.169% | $855.27 | $75,289 |
| | Oct. | 113.00 | 10.80 | $1,220 | 1.169% | $880.19 | $77,390 |
| | Nov. | 113.00 | 2.40 | $271 | 1.169% | $904.75 | $78,566 |
| | Dec. | 113.00 | 1.40 | $158 | 1.169% | $918.50 | $79,643 |
| | | | ------ | ------ | ------ | | |
| | | | 84.40 | $9,537 | 14.829% | | |
| | | | | | | | |
| 1982 | Jan. | 126.00 | 11.40 | $1,436 | 0.891% | $709.22 | $81,788 |
| | Feb. | 126.00 | 3.10 | $391 | 0.891% | $720.32 | $82,907 |
| | March | 126.00 | 2.00 | $252 | 0.891% | $730.29 | $83,897 |
| | Apr. | 126.00 | 0.00 | $0 | 0.891% | $747.11 | $84,644 |
| | May | 126.00 | 6.60 | $832 | 0.891% | $753.76 | $86,230 |
| | June | 126.00 | 44.50 | $5,607 | 0.891% | $767.88 | $92,605 |
| | July | 126.00 | 10.40 | $1,310 | 0.891% | $824.65 | $94,740 |
| | Aug. | 126.00 | 5.60 | $706 | 0.891% | $843.66 | $96,289 |
| | Sept. | 126.00 | 0.80 | $101 | 0.891% | $857.45 | $97,247 |
| | Oct. | 126.00 | 0.00 | $0 | 0.891% | $865.99 | $98,113 |
| | Nov. | 126.00 | 7.40 | $932 | 0.891% | $873.70 | $99,919 |
| | Dec. | 126.00 | 4.50 | $567 | 0.891% | $889.78 | $101,376 |
| | | | ------ | ------ | ------ | | |
| | | | 96.30 | $12,134 | 10.686% | | |
| | | | | | | | |
| 1983 | Jan. | 134.00 | 12.50 | $1,675 | 0.719% | $729.06 | $103,780 |
| | Feb. | 134.00 | 8.90 | $1,193 | 0.719% | $746.35 | $105,719 |
| | March | 138.00 | 1.10 | $152 | 0.719% | $760.30 | $106,631 |
| | Apr. | 138.00 | 7.10 | $980 | 0.719% | $766.86 | $108,378 |
| | May | 138.00 | 66.60 | $9,191 | 0.719% | $779.42 | $118,346 |
| | June | 138.00 | 30.10 | $4,154 | 0.719% | $851.12 | $123,353 |
| | July | 138.00 | 13.20 | $1,822 | 0.719% | $887.11 | $126,062 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | |
|---|---|---|---|---|---|---|
| | Aug. | 138.00 | 16.80 | $2,318 | 0.719% | $906.59 | $129,287 |
| | Sept. | 138.00 | 9.50 | $1,311 | 0.719% | $929.79 | $131,528 |
| | Oct. | 138.00 | 16.10 | $2,222 | 0.719% | $945.90 | $134,695 |
| | Nov. | 138.00 | 9.80 | $1,352 | 0.719% | $968.68 | $137,016 |
| | Dec. | 138.00 | 5.80 | $800 | 0.719% | $985.38 | $138,802 |
| | | | ------ | ------ | ------ | | |
| | | | 197.50 | $27,169 | 8.630% | | |
| | | | | | | | |
| 1984 | Jan. | 148.00 | 6.60 | $977 | 0.798% | $1,108.10 | $140,887 |
| | Feb. | 148.00 | 0.00 | $0 | 0.798% | $1,124.75 | $142,012 |
| | March | 148.00 | 5.10 | $755 | 0.798% | $1,133.73 | $143,900 |
| | Apr. | 148.00 | 36.10 | $5,343 | 0.798% | $1,148.80 | $150,392 |
| | May | 148.00 | 52.40 | $7,755 | 0.798% | $1,200.63 | $159,348 |
| | June | 148.00 | 3.30 | $488 | 0.798% | $1,272.13 | $161,108 |
| | July | 148.00 | 0.00 | $0 | 0.798% | $1,286.18 | $162,394 |
| | Aug. | 148.00 | 0.90 | $133 | 0.798% | $1,296.45 | $163,824 |
| | Sept. | 148.00 | 8.20 | $1,214 | 0.798% | $1,307.86 | $166,346 |
| | Oct. | 148.00 | 8.20 | $1,214 | 0.798% | $1,327.99 | $168,887 |
| | Nov. | 148.00 | 0.00 | $0 | 0.798% | $1,348.20 | $170,235 |
| | Dec. | 148.00 | 0.00 | $0 | 0.798% | $1,359.85 | $171,594 |
| | | | ------ | ------ | ------ | | |
| | | | 120.00 | $17,878 | 9.580% | | |
| | | | | | | | |
| 1985 | Jan. | 160.00 | 0.00 | $0 | 0.623% | $1,069.61 | $172,664 |
| | Feb. | 160.00 | 0.00 | $0 | 0.623% | $1,076.27 | $173,740 |
| | March | 160.00 | 0.00 | $0 | 0.623% | $1,082.98 | $174,823 |
| | Apr. | 160.00 | 0.00 | $0 | 0.623% | $1,089.73 | $175,913 |
| | May | 160.00 | 0.00 | $0 | 0.623% | $1,096.52 | $177,010 |
| | June | 160.00 | 0.00 | $0 | 0.623% | $1,103.36 | $178,113 |
| | July | 160.00 | 0.00 | $0 | 0.623% | $1,110.24 | $179,223 |
| | Aug. | 160.00 | 0.00 | $0 | 0.623% | $1,117.16 | $180,340 |
| | Sept. | 160.00 | 0.00 | $0 | 0.623% | $1,124.12 | $181,464 |
| | Oct. | 160.00 | 0.00 | $0 | 0.623% | $1,131.13 | $182,596 |
| | Nov. | 160.00 | 0.00 | $0 | 0.623% | $1,138.18 | $183,734 |
| | Dec. | 160.00 | 0.00 | $0 | 0.623% | $1,145.27 | $184,879 |
| | | | ------ | ------ | ------ | | |
| | | | 0.00 | $0 | 7.480% | | |
| | | | | | | | |
| 1986 | Jan. | | 0.00 | $0 | 0.498% | $921.31 | $185,800 |
| | Feb. | | 0.00 | $0 | 0.498% | $925.91 | $186,726 |
| | March | | 0.00 | $0 | 0.498% | $930.52 | $187,657 |
| | Apr. | | 0.00 | $0 | 0.498% | $935.16 | $188,592 |
| | May | | 0.00 | $0 | 0.498% | $939.82 | $189,532 |
| | June | | 0.00 | $0 | 0.498% | $944.50 | $190,476 |
| | July | | 0.00 | $0 | 0.498% | $949.21 | $191,425 |
| | Aug. | | 0.00 | $0 | 0.498% | $953.94 | $192,379 |
| | Sept. | | 0.00 | $0 | 0.498% | $958.69 | $193,338 |
| | Oct. | | 0.00 | $0 | 0.498% | $963.47 | $194,302 |
| | Nov. | | 0.00 | $0 | 0.498% | $968.27 | $195,270 |
| | Dec. | | 0.00 | $0 | 0.498% | $973.09 | $196,243 |
| | | | | | | | |
| 1987 | Jan. | | 0.00 | $0 | 0.485% | $951.78 | $197,195 |

ACCUMULATED PRESENT VALUE OF FEES IN SHARMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | |
|---|---|---|---|---|---|
| Feb. | 0.00 | $0 | 0.485% | $956.39 | $198,151 |
| March | 0.00 | $0 | 0.485% | $961.03 | $199,112 |
| Apr. | 0.00 | $0 | 0.485% | $965.69 | $200,078 |
| May | 0.00 | $0 | 0.485% | $970.38 | $201,048 |
| June | 0.00 | $0 | 0.485% | $975.08 | $202,023 |
| July | 0.00 | $0 | 0.485% | $979.81 | $203,003 |
| Aug. | 0.00 | $0 | 0.485% | $984.56 | $203,988 |
| Sept. .. | 0.00 | $0 | 0.485% | $989.34 | $204,977 |
| | ------ | ------- | ------ | | |
| | 0.00 | $0 | 5.820% | | |

| | | | |
|---|---|---|---|
| 1199.00 | $109,548 | | $204,977 |
| ======== | ======== | | ======== |

* Represents average 3 month T-Bill rate for entire year.

D-6

# APPENDIX E

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

ATTORNEY:PLOTKIN

| (A) Year | (B) Month | (C) Billing Rate | (D) Monthly Hours | (E) [(C) x (D)] Contemporaneous Payment Amount | (F) Three Month T-Bill Rate | (G) Previous Month's Accumulated Value x Current Month's T-Bill Rate | (H) Accumulated Present Value |
|---|---|---|---|---|---|---|---|
| 1969 | Aug. | | | | 0.556% | | |
| | Sept. | 50.00 | 2.40 | $120 | 0.556% | $0.00 | $120 |
| | Oct. | 50.00 | 0.00 | $0 | 0.556% | $0.67 | $121 |
| | Nov. | 50.00 | 0.00 | $0 | 0.556% | $0.67 | $121 |
| | Dec. | 50.00 | 19.40 | $970 | 0.556% | $0.68 | $1,092 |
| | | | ------ | ------ | ------ | | |
| | | | 21.80 | $1,090 | 6.677% | | |
| 1970 | Jan. | 50.00 | 24.10 | $1,205 | 0.538% | $5.88 | $2,303 |
| | Feb. | 50.00 | 40.00 | $2,000 | 0.538% | $12.39 | $4,315 |
| | March | 50.00 | 0.00 | $0 | 0.538% | $23.22 | $4,339 |
| | Apr. | 50.00 | 0.00 | $0 | 0.538% | $23.35 | $4,362 |
| | May | 50.00 | 1.20 | $60 | 0.538% | $23.47 | $4,445 |
| | June | 50.00 | 1.40 | $70 | 0.538% | $23.92 | $4,539 |
| | July | 50.00 | 6.20 | $310 | 0.538% | $24.43 | $4,874 |
| | Aug. | 50.00 | 2.30 | $115 | 0.538% | $26.23 | $5,015 |
| | Sept. | 50.00 | 3.20 | $160 | 0.538% | $26.99 | $5,202 |
| | Oct. | 50.00 | 0.00 | $0 | 0.538% | $27.99 | $5,230 |
| | Nov. | 50.00 | 23.00 | $1,150 | 0.538% | $28.15 | $6,408 |
| | Dec. | 55.00 | 20.10 | $1,106 | 0.538% | $34.49 | $7,548 |
| | | | ------ | ------ | ------ | | |
| | | | 121.50 | $6,176 | 6.458% | | |
| 1971 | Jan. | 55.00 | 9.70 | $534 | 0.362% | $27.35 | $8,109 |
| | Feb. | 55.00 | 0.00 | $0 | 0.362% | $29.38 | $8,138 |
| | March | 55.00 | 0.00 | $0 | 0.362% | $29.49 | $8,168 |
| | Apr. | 55.00 | 0.00 | $0 | 0.362% | $29.59 | $8,197 |
| | May | 55.00 | 0.00 | $0 | 0.362% | $29.70 | $8,227 |
| | June | 60.00 | 0.00 | $0 | 0.362% | $29.81 | $8,257 |
| | July | 60.00 | 0.00 | $0 | 0.362% | $29.92 | $8,287 |
| | Aug. | 60.00 | 0.00 | $0 | 0.362% | $30.03 | $8,317 |
| | Sept. | 60.00 | 0.00 | $0 | 0.362% | $30.13 | $8,347 |
| | Oct. | 60.00 | 0.00 | $0 | 0.362% | $30.24 | $8,377 |
| | Nov. | 60.00 | 10.00 | $600 | 0.362% | $30.35 | $9,008 |
| | Dec. | 60.00 | 5.20 | $312 | 0.362% | $32.64 | $9,352 |
| | | | ------ | ------ | ------ | | |
| | | | 24.90 | $1,446 | 4.348% | | |
| 1972 | Jan. | 60.00 | 0.00 | $0 | 0.339% | $31.73 | $9,384 |
| | Feb. | 60.00 | 43.20 | $2,592 | 0.339% | $31.83 | $12,008 |
| | March | 60.00 | 7.10 | $426 | 0.339% | $40.74 | $12,474 |
| | Apr. | 60.00 | 28.70 | $1,722 | 0.339% | $42.32 | $14,239 |
| | May | 60.00 | 25.50 | $1,530 | 0.339% | $48.31 | $15,817 |
| | June | 60.00 | 12.30 | $738 | 0.339% | $53.66 | $16,609 |
| | July | 60.00 | 7.70 | $462 | 0.339% | $56.35 | $17,127 |
| | Aug. | 60.00 | 7.20 | $432 | 0.339% | $58.10 | $17,617 |
| | Sept. | 60.00 | 9.70 | $582 | 0.339% | $59.77 | $18,259 |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|------|-------|-------|-------|----------|--------|----------|----------|
| | Oct. | 60.00 | 22.60 | $1,356 | 0.339% | $61.94 | $19,677 |
| | Nov. | 60.00 | 9.60 | $576 | 0.339% | $66.75 | $20,320 |
| | Dec. | 60.00 | 0.00 | $0 | 0.339% | $68.93 | $20,389 |
| | | | ------ | ------ | ------- | | |
| | | | 173.60 | $10,416 | 4.071% | | |
| | | | | | | | |
| 1973 | Jan. | 60.00 | 1.20 | $72 | 0.587% | $119.63 | $20,580 |
| | Feb. | 60.00 | 8.80 | $528 | 0.587% | $120.75 | $21,229 |
| | March | 60.00 | 0.00 | $0 | 0.587% | $124.56 | $21,354 |
| | Apr. | 60.00 | 0.00 | $0 | 0.587% | $125.29 | $21,479 |
| | May | 60.00 | 0.00 | $0 | 0.587% | $126.03 | $21,605 |
| | June | 60.00 | 6.58 | $395 | 0.587% | $126.77 | $22,126 |
| | July | 60.00 | 6.58 | $395 | 0.587% | $129.83 | $22,651 |
| | Aug. | 60.00 | 6.58 | $395 | 0.587% | $132.91 | $23,179 |
| | Sept. | 60.00 | 6.58 | $395 | 0.587% | $136.00 | $23,710 |
| | Oct. | 60.00 | 6.58 | $395 | 0.587% | $139.12 | $24,243 |
| | Nov. | 60.00 | 6.58 | $395 | 0.587% | $142.25 | $24,781 |
| | Dec. | 60.00 | 6.58 | $395 | 0.587% | $145.40 | $25,321 |
| | | | ------ | ------ | ------- | | |
| | | | 56.06 | $3,364 | 7.041% | | |
| | | | | | | | |
| 1974 | Jan. | 65.00 | 6.58 | $428 | 0.657% | $166.40 | $25,915 |
| | Feb. | 65.00 | 6.58 | $428 | 0.657% | $170.30 | $26,513 |
| | March | 65.00 | 6.58 | $428 | 0.657% | $174.23 | $27,115 |
| | Apr. | 65.00 | 6.58 | $428 | 0.657% | $178.19 | $27,721 |
| | May | 65.00 | 6.58 | $428 | 0.657% | $182.17 | $28,331 |
| | June | 65.00 | 6.58 | $428 | 0.657% | $186.18 | $28,944 |
| | July | 65.00 | 6.58 | $428 | 0.657% | $190.21 | $29,562 |
| | Aug. | 65.00 | 6.58 | $428 | 0.657% | $194.27 | $30,184 |
| | Sept. | 65.00 | 6.58 | $428 | 0.657% | $198.36 | $30,810 |
| | Oct. | 65.00 | 6.58 | $428 | 0.657% | $202.48 | $31,441 |
| | Nov. | 65.00 | 6.58 | $428 | 0.657% | $206.62 | $32,075 |
| | Dec. | 65.00 | 6.58 | $428 | 0.657% | $210.79 | $32,713 |
| | | | ------ | ------ | ------- | | |
| | | | 78.96 | $5,132 | 7.886% | | |
| | | | | | | | |
| 1975 | Jan. | 70.00 | 44.00 | $3,080 | 0.487% | $159.15 | $35,952 |
| | Feb. | 70.00 | 1.10 | $77 | 0.487% | $174.91 | $36,204 |
| | March | 70.00 | 0.00 | $0 | 0.487% | $176.13 | $36,301 |
| | Apr. | 70.00 | 0.00 | $0 | 0.487% | $176.99 | $36,550 |
| | May | 70.00 | 0.00 | $0 | 0.487% | $177.85 | $36,735 |
| | June | 70.00 | 0.00 | $0 | 0.487% | $178.72 | $36,914 |
| | July | 70.00 | 0.00 | $0 | 0.487% | $179.59 | $37,094 |
| | Aug. | 70.00 | 0.00 | $0 | 0.487% | $180.46 | $37,274 |
| | Sept. | 70.00 | 0.00 | $0 | 0.487% | $181.34 | $37,455 |
| | Oct. | 70.00 | 0.00 | $0 | 0.487% | $182.22 | $37,638 |
| | Nov. | 70.00 | 0.00 | $0 | 0.487% | $183.11 | $37,821 |
| | Dec. | 70.00 | 0.00 | $0 | 0.487% | $184.00 | $38,005 |
| | | | ------ | ------ | ------- | | |
| | | | 45.10 | $3,157 | 5.838% | | |
| | | | | | | | |
| 1976 | Jan. | 75.00 | 0.00 | $0 | 0.416% | $158.00 | $38,163 |
| | Feb. | 75.00 | 0.00 | $0 | 0.416% | $158.66 | $38,321 |
| | March | 75.00 | 0.00 | $0 | 0.416% | $159.32 | $38,481 |

## APPENDIX E—Continued

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|------|-------|--------|------|-----|---------|----------|----------|
| | Apr. | 75.00 | 0.00 | $0 | 0.416% | $159.98 | $38,641 |
| | May | 75.00 | 0.00 | $0 | 0.416% | $160.65 | $38,801 |
| | June | 75.00 | 0.00 | $0 | 0.416% | $161.32 | $38,963 |
| | July | 75.00 | 0.00 | $0 | 0.416% | $161.99 | $39,125 |
| | Aug. | 75.00 | 0.00 | $0 | 0.416% | $162.66 | $39,287 |
| | Sept. | 75.00 | 0.00 | $0 | 0.416% | $163.34 | $39,451 |
| | Oct. | 75.00 | 0.00 | $0 | 0.416% | $164.02 | $39,615 |
| | Nov. | 75.00 | 0.00 | $0 | 0.416% | $164.70 | $39,779 |
| | Dec. | 75.00 | 0.00 | $0 | 0.416% | $165.38 | $39,945 |
| | | | 0.00 | $0 | 4.989% | | |
| 1977 | Jan. | 85.00 | 0.00 | $0 | 0.439% | $175.26 | $40,120 |
| | Feb. | 85.00 | 0.00 | $0 | 0.439% | $176.03 | $40,296 |
| | March | 85.00 | 0.00 | $0 | 0.439% | $176.80 | $40,473 |
| | Apr. | 85.00 | 0.00 | $0 | 0.439% | $177.57 | $40,650 |
| | May | 85.00 | 0.00 | $0 | 0.439% | $178.35 | $40,829 |
| | June | 85.00 | 0.00 | $0 | 0.439% | $179.14 | $41,008 |
| | July | 85.00 | 0.00 | $0 | 0.439% | $179.92 | $41,188 |
| | Aug. | 85.00 | 0.00 | $0 | 0.439% | $180.71 | $41,369 |
| | Sept. | 85.00 | 0.00 | $0 | 0.439% | $181.50 | $41,550 |
| | Oct. | 85.00 | 0.00 | $0 | 0.439% | $182.30 | $41,732 |
| | Nov. | 85.00 | 0.00 | $0 | 0.439% | $183.10 | $41,915 |
| | Dec. | 85.00 | 0.00 | $0 | 0.439% | $183.90 | $42,099 |
| | | | 0.00 | $0 | 5.265% | | |
| 1978 | Jan. | 85.00 | 0.00 | $0 | 0.602% | $253.33 | $42,353 |
| | Feb. | 85.00 | 0.00 | $0 | 0.602% | $254.86 | $42,608 |
| | March | 85.00 | 0.00 | $0 | 0.602% | $256.39 | $42,864 |
| | Apr. | 85.00 | 0.00 | $0 | 0.602% | $257.93 | $43,122 |
| | May | 85.00 | 0.00 | $0 | 0.602% | $259.49 | $43,381 |
| | June | 85.00 | 0.00 | $0 | 0.602% | $261.05 | $43,642 |
| | July | 85.00 | 0.00 | $0 | 0.602% | $262.62 | $43,905 |
| | Aug. | 85.00 | 0.00 | $0 | 0.602% | $264.20 | $44,169 |
| | Sept. | 85.00 | 0.00 | $0 | 0.602% | $265.79 | $44,435 |
| | Oct. | 85.00 | 0.00 | $0 | 0.602% | $267.39 | $44,702 |
| | Nov. | 100.00 | 0.00 | $0 | 0.602% | $269.00 | $44,971 |
| | Dec. | 100.00 | 0.00 | $0 | 0.602% | $270.62 | $45,242 |
| | | | 0.00 | $0 | 7.221% | | |
| 1979 | Jan. | 100.00 | 0.00 | $0 | 0.837% | $378.56 | $45,621 |
| | Feb. | 100.00 | 0.00 | $0 | 0.837% | $381.73 | $46,002 |
| | March | 100.00 | 0.00 | $0 | 0.837% | $384.92 | $46,387 |
| | Apr. | 100.00 | 0.00 | $0 | 0.837% | $388.15 | $46,775 |
| | May | 100.00 | 0.00 | $0 | 0.837% | $391.39 | $47,167 |
| | June | 100.00 | 0.00 | $0 | 0.837% | $394.67 | $47,561 |
| | July | 100.00 | 0.00 | $0 | 0.837% | $397.97 | $47,959 |
| | Aug. | 100.00 | 0.00 | $0 | 0.837% | $401.30 | $48,361 |
| | Sept. | 125.00 | 0.00 | $0 | 0.837% | $404.66 | $48,765 |
| | Oct. | 125.00 | 0.00 | $0 | 0.837% | $408.04 | $49,173 |
| | Nov. | 125.00 | 0.00 | $0 | 0.837% | $411.46 | $49,585 |
| | Dec. | 125.00 | 0.00 | $0 | 0.837% | $414.90 | $50,000 |
| | | | 0.00 | $0 | 10.041% | | |

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|------|-------|--------|-------|--------|---------|-----------|-----------|
| 1980 | Jan. | 125.00 | 0.00 | $0 | 0.959% | $479.41 | $50,479 |
| | Feb. | 125.00 | 0.00 | $0 | 0.959% | $484.01 | $50,963 |
| | March | 125.00 | 0.00 | $0 | 0.959% | $488.65 | $51,452 |
| | Apr. | 125.00 | 0.00 | $0 | 0.959% | $493.34 | $51,945 |
| | May | 125.00 | 0.00 | $0 | 0.959% | $498.07 | $52,443 |
| | June | 125.00 | 0.00 | $0 | 0.959% | $502.84 | $52,946 |
| | July | 125.00 | 0.00 | $0 | 0.959% | $507.67 | $53,454 |
| | Aug. | 125.00 | 0.00 | $0 | 0.959% | $512.53 | $53,966 |
| | Sept. | 135.00 | 0.00 | $0 | 0.959% | $517.45 | $54,484 |
| | Oct. | 135.00 | 0.00 | $0 | 0.959% | $522.41 | $55,006 |
| | Nov. | 135.00 | 0.00 | $0 | 0.959% | $527.42 | $55,534 |
| | Dec. | 135.00 | 0.00 | $0 | 0.959% | $532.47 | $56,066 |
| | | | 0.00 | $0 | 11.506% | | |
| 1981 | Jan. | 135.00 | 0.00 | $0 | 1.169% | $655.46 | $56,722 |
| | Feb. | 135.00 | 0.00 | $0 | 1.169% | $663.12 | $57,385 |
| | March | 135.00 | 0.00 | $0 | 1.169% | $670.87 | $58,056 |
| | Apr. | 135.00 | 0.00 | $0 | 1.169% | $678.72 | $58,734 |
| | May | 135.00 | 0.00 | $0 | 1.169% | $686.65 | $59,421 |
| | June | 135.00 | 0.00 | $0 | 1.169% | $694.68 | $60,116 |
| | July | 135.00 | 0.00 | $0 | 1.169% | $702.80 | $60,818 |
| | Aug. | 135.00 | 0.00 | $0 | 1.169% | $711.02 | $61,529 |
| | Sept. | 135.00 | 0.00 | $0 | 1.169% | $719.33 | $62,249 |
| | Oct. | 135.00 | 0.00 | $0 | 1.169% | $727.74 | $62,976 |
| | Nov. | 135.00 | 0.00 | $0 | 1.169% | $736.25 | $63,713 |
| | Dec. | 135.00 | 0.00 | $0 | 1.169% | $744.85 | $64,458 |
| | | | 0.00 | $0 | 14.029% | | |
| 1982 | Jan. | 150.00 | 0.00 | $0 | 0.891% | $573.99 | $65,032 |
| | Feb. | 150.00 | 0.00 | $0 | 0.891% | $579.11 | $65,611 |
| | March | 150.00 | 0.00 | $0 | 0.891% | $584.26 | $66,195 |
| | Apr. | 150.00 | 0.00 | $0 | 0.891% | $589.47 | $66,784 |
| | May | 150.00 | 1.30 | $195 | 0.891% | $594.72 | $67,574 |
| | June | 150.00 | 88.70 | $13,305| 0.891% | $601.75 | $81,481 |
| | July | 150.00 | 21.10 | $3,165 | 0.891% | $725.59 | $85,371 |
| | Aug. | 150.00 | 33.20 | $4,980 | 0.891% | $760.23 | $91,112 |
| | Sept. | 150.00 | 0.00 | $0 | 0.891% | $811.35 | $91,923 |
| | Oct. | 150.00 | 0.00 | $0 | 0.891% | $818.57 | $92,742 |
| | Nov. | 150.00 | 0.00 | $0 | 0.891% | $825.86 | $93,567 |
| | Dec. | 150.00 | 27.40 | $4,110 | 0.891% | $833.22 | $98,511 |
| | | | 171.70| $25,755| 10.686% | | |
| 1983 | Jan. | 150.00 | 0.00 | $0 | 0.719% | $708.46 | $99,219 |
| | Feb. | 150.00 | 0.00 | $0 | 0.719% | $713.55 | $99,933 |
| | March | 150.00 | 0.70 | $105 | 0.719% | $718.68 | $100,756 |
| | Apr. | 165.00 | 18.10 | $2,987 | 0.719% | $724.61 | $104,468 |
| | May | 165.00 | 17.50 | $2,888 | 0.719% | $751.30 | $108,106 |
| | June | 165.00 | 3.50 | $578 | 0.719% | $777.46 | $109,461 |
| | July | 165.00 | 0.00 | $0 | 0.719% | $787.21 | $110,248 |

E-4

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Aug. | 165.00 | 0.00 | $0 | 0.719% | $792.87 | $111,841 |
| | Sept. | 165.00 | 0.00 | $0 | 0.719% | $798.57 | $111,848 |
| | Oct. | 165.00 | 0.00 | $0 | 0.719% | $804.32 | $112,644 |
| | Nov. | 165.00 | 0.00 | $0 | 0.719% | $810.10 | $113,454 |
| | Dec. | 165.00 | 0.00 | $0 | 0.719% | $815.93 | $114,270 |
| | | | ------ | ------ | ------ | | |
| | | | 39.86 | $6,557 | 8.630% | | |
| | | | | | | | |
| 1984 | Jan. | 180.00 | 0.00 | $0 | 0.798% | $912.26 | $115,183 |
| | Feb. | 180.00 | 0.00 | $0 | 0.798% | $919.54 | $116,102 |
| | March | 180.00 | 0.00 | $0 | 0.798% | $926.88 | $117,029 |
| | Apr. | 180.00 | 0.00 | $0 | 0.798% | $934.28 | $117,963 |
| | May | 180.00 | 0.00 | $0 | 0.798% | $941.74 | $118,905 |
| | June | 180.00 | 0.00 | $0 | 0.798% | $949.26 | $119,854 |
| | July | 180.00 | 0.00 | $0 | 0.798% | $956.84 | $120,811 |
| | Aug. | 180.00 | 0.00 | $0 | 0.798% | $964.47 | $121,776 |
| | Sept. | 180.00 | 0.00 | $0 | 0.798% | $972.17 | $122,748 |
| | Oct. | 180.00 | 0.00 | $0 | 0.798% | $979.94 | $123,728 |
| | Nov. | 180.00 | 0.00 | $0 | 0.798% | $987.76 | $124,715 |
| | Dec. | 180.00 | 0.00 | $0 | 0.798% | $995.64 | $125,711 |
| | | | ------ | ------ | ------ | | |
| | | | 0.00 | $0 | 9.580% | | |
| | | | | | | | |
| 1985 | Jan. | 185.00 | 0.00 | $0 | 0.623% | $783.60 | $126,495 |
| | Feb. | 185.00 | 0.00 | $0 | 0.623% | $788.48 | $127,283 |
| | March | 185.00 | 0.00 | $0 | 0.623% | $793.40 | $128,077 |
| | Apr. | 185.00 | 0.00 | $0 | 0.623% | $798.34 | $128,875 |
| | May | 185.00 | 0.00 | $0 | 0.623% | $803.32 | $129,678 |
| | June | 185.00 | 0.00 | $0 | 0.623% | $808.33 | $130,487 |
| | July | 185.00 | 0.00 | $0 | 0.623% | $813.37 | $131,300 |
| | Aug. | 185.00 | 0.00 | $0 | 0.623% | $818.44 | $132,118 |
| | Sept. | 185.00 | 0.00 | $0 | 0.623% | $823.54 | $132,942 |
| | Oct. | 185.00 | 0.00 | $0 | 0.623% | $828.67 | $133,771 |
| | Nov. | 185.00 | 0.00 | $0 | 0.623% | $833.84 | $134,604 |
| | Dec. | 185.00 | 0.00 | $0 | 0.623% | $839.03 | $135,443 |
| | | | ------ | ------ | ------ | | |
| | | | 0.00 | $0 | 7.480% | | |
| | | | | | | | |
| 1986 | Jan. | | 0.00 | $0 | 0.498% | $674.96 | $136,118 |
| | Feb. | | 0.00 | $0 | 0.498% | $678.32 | $136,797 |
| | March | | 0.00 | $0 | 0.498% | $681.70 | $137,478 |
| | Apr. | | 0.00 | $0 | 0.498% | $685.10 | $138,163 |
| | May | | 0.00 | $0 | 0.498% | $688.51 | $138,852 |
| | June | | 0.00 | $0 | 0.498% | $691.95 | $139,544 |
| | July | | 0.00 | $0 | 0.498% | $695.39 | $140,239 |
| | Aug. | | 0.00 | $0 | 0.498% | $698.86 | $140,938 |
| | Sept. | | 0.00 | $0 | 0.498% | $702.34 | $141,641 |
| | Oct. | | 0.00 | $0 | 0.498% | $705.84 | $142,346 |
| | Nov. | | 0.00 | $0 | 0.498% | $709.36 | $143,056 |
| | Dec. | | 0.00 | $0 | 0.498% | $712.89 | $143,769 |
| | | | ------ | ------ | ------ | | |
| | | | 0.00 | $0 | 5.980% | | |
| | | | | | | | |
| 1987 | Jan. | | 0.00 | $0 | 0.485% | $697.28 | $144,466 |

E-5

ACCUMULATED PRESENT VALUE OF FEES IN SHAKMAN LITIGATION AS OF 30 NOVEMBER 1987

| | | | | | |
|---|---|---|---|---|---|
| Feb. | 0.00 | $0 | 0.485% | $700.66 | $145,167 |
| March | 0.00 | $0 | 0.485% | $704.66 | $145,871 |
| Apr. | 0.00 | $0 | 0.485% | $707.47 | $146,578 |
| May | 0.00 | $0 | 0.485% | $710.90 | $147,289 |
| June | 0.00 | $0 | 0.485% | $714.35 | $148,003 |
| July | 0.00 | $0 | 0.485% | $717.82 | $148,721 |
| Aug. | 0.00 | $0 | 0.485% | $721.30 | $149,442 |
| Sept. .. | 0.00 | $0 | 0.485% | $724.80 | $150,167 |
| Oct. | 0.00 | $0 | 0.485% | $728.31 | $150,896 |
| Nov. | 0.00 | $0 | 0.485% | $731.84 | $151,627 |
| | ------ | ------- | ------ | | |
| | 0.00 | $0 | 5.820% | | |

| | | |
|---|---|---|
| 733.40 | $63,090 | $151,627 |
| ====== | ======= | ======== |

* Represents average 3 month T-Bill rate for entire year.

E-6